# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 44478

| | | |
|---|---|---|
| COEUR D'ALENE TRIBE, a federally recognized Indian Tribe, | ) ) ) | Boise, August 2017 Term |
| Plaintiff-Respondent, | ) ) | 2017 Opinion No. 109 |
| v. | ) ) | Filed: November 3, 2017 |
| KENNETH JOHNSON and DONNA JOHNSON, | ) ) ) ) | Karel A. Lehrman, Clerk |
| Defendants-Appellants. | ) ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Benewah County. Hon. Scott L. Wayman, District Judge.

The judgment of the district court is <u>affirmed in part</u>, <u>reversed in part</u>, and <u>remanded for further proceedings</u>.

Moffatt, Thomas, Barrett, Rock & Fields, Chartered, Boise, for appellants. Norman M. Semanko argued.

Smith & Malek PLLC, Coeur d'Alene, for respondent. Peter John Smith, IV argued.

_____

HORTON, J.

Kenneth and Donna Johnson appeal the judgment of the district court in Benewah County recognizing a tribal judgment from the Coeur d'Alene Tribal Court (Tribal Court). The Johnsons own land within the Coeur d'Alene Reservation (Reservation) on the banks of the St. Joe River and have a dock and pilings on the river. The Coeur d'Alene Tribe (Tribe) initiated an action in Tribal Court to enforce a tribal statute which requires a permit for docks on the St. Joe River within the Reservation. The Johnsons did not appear and a default judgment was entered against them. The judgment imposed a civil penalty of $17,400 and declared that the Tribe was entitled to remove the dock and pilings. On January 22, 2016, the Tribe filed a petition to have the Tribal Court judgment recognized in Idaho pursuant to the Enforcement of Foreign Judgments Act. I.C. §§ 10-1301, et seq. Following a hearing, the district court held that the Tribal Judgment was valid and enforceable. We affirm in part, reverse in part, and remand for further proceedings.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

The Johnsons own property on the bank of the St. Joe River and have a dock and pilings that extend into the river from their property. The Johnsons' property is located within the Reservation, but the Tribe does not own the Johnsons' land, and the Johnsons are not members of the Tribe.

On June 5, 2014, the Tribe sent the Johnsons a letter asking them to remove their dock and pilings or obtain a permit from the Tribe. The Johnsons neither removed their dock nor obtained a permit. The Tribe filed suit in the Tribal Court and served notice of the suit on the Johnsons. The Johnsons did not appear, and the Tribal Court entered an order of default against them. The Johnsons were then served with notice of a hearing to determine damages. Once again, the Johnsons did not appear, and judgment was entered against them. The April 1, 2015, Tribal Court judgment imposed a civil penalty of $17,400 and declared that the Johnsons were trespassing upon tribally controlled lands and that the Tribe was entitled to remove the encroachment.

On March 2, 2016, the Tribe filed a motion for an order recognizing the foreign judgment in the district court in Benewah County. The Johnsons objected, arguing that their dock and pilings are located above the high water mark as it existed when the Reservation was set aside in 1873 and that the Tribal Court lacked jurisdiction. After hearing the motion, the district court applied this Court's decision in *Sheppard v. Sheppard*, 104 Idaho 1, 655 P.2d 895 (1982), and held that the Tribal Court judgment was entitled to recognition and enforcement. The Johnsons timely appealed.

# II. STANDARD OF REVIEW

Enforcement of a foreign judgment is "a question of law over which this Court exercises free review." *Burns v. Baldwin*, 138 Idaho 480, 483, 65 P.3d 502, 505 (2003).

# III. ANALYSIS

The district court held that the Tribal Court judgment was entitled to full faith and credit. In so holding, the district court properly applied[1] the rule announced by this Court in *Sheppard*. There, we held that a tribal judgment is entitled to full faith and credit pursuant to 28 U.S.C. section 1738. 104 Idaho at 8, 655 P.2d at 902. That statute provides:

---

[1] "[T]he lower courts are obligated to abide by the decisions of this Court and the Court of Appeals." *Gonzalez v. Thacker*, 148 Idaho 879, 883, 231 P.3d 524, 528 (2009).

The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.

The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738.

This Court "found the phrase 'Territories and Possessions' broad enough to include Indian tribes." *Sheppard*, 104 Idaho at 8, 655 P.2d at 902. The Johnsons argue that this Court should overrule *Sheppard* and apply the Ninth Circuit's analysis found in *Wilson v. Marchington*, 127 F.3d 805 (9th Cir. 1997). We will first consider the Johnsons' request that we overrule *Sheppard* before deciding whether the district court erred by recognizing the Tribal Court judgment.

## A. Tribal court judgments are not entitled to full faith and credit, and *Sheppard*'s holding to the contrary is overruled.

Article IV, section 1, of the United States Constitution provides:

Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

U.S. Const. art. IV, § 1. "Nothing in debates of the Constitutional Convention concerning the clause indicates the framers thought the clause would apply to Indian tribes." *Wilson*, 127 F.3d at 808. In *Wilson*, the Ninth Circuit Court of Appeals held that 28 U.S.C. section 1738 did not extend full faith and credit to the tribes. *Wilson*, 127 F.3d at 809. Instead, that court held that the recognition and enforcement of tribal judgments rested on principles of comity. *Id.*

As noted above, *Sheppard* held that the language "Territory or Possession" in 28 U.S.C. section 1738 was broad enough to include Indian tribes and tribal courts. *Sheppard*, 104 Idaho at 8, 655 P.2d at 902. In so holding, we stated that "[w]e believe that this holding will facilitate better relations between the courts of this state and the various tribal courts within Idaho." *Id.*

In reaching its decision in *Wilson*, the Ninth Circuit considered legislation enacted subsequent to 28 U.S.C. section 1738 wherein Congress expressly stated that tribal judgments are entitled to full faith and credit with respect to certain judgments. *Wilson*, 127 F.3d at 809. "A later legislative act can be regarded as a legislative interpretation of an earlier act and 'is therefore entitled to greater weight in resolving any ambiguities and doubts.' " *Id.* (quoting *Erlenbaugh v. United States*, 409 U.S. 239, 243–44 (1972)). "If full faith and credit had already been extended to Indian tribes, enactment of the Indian Land Consolidation Act, the Maine Indian Claims Settlement Act, and the Indian Child Welfare Act would not have been necessary." *Id.* "Further, the separate listing of territories, possessions and Indian tribes in the Indian Child Welfare Act provides an indication that Congress did not view these terms synonymous." *Id.*

As noted in *Wilson*, since the passage of 28 U.S.C. section 1738, Congress has passed at least three laws expressly extending full faith and credit to tribal decisions. *Id.* at 808–09; Indian Land Consolidation Act, 25 U.S.C. §§ 2201–2211 (1983); Maine Indian Claims Settlement Act, 25 U.S.C. § 1725(g)(1980); Indian Child Welfare Act of 1978, 25 U.S.C. §§ 1901 *et seq*. That these statutes expressly extend full faith and credit to tribal decisions strongly suggests that Congress did not consider Indian tribes to be territories or possessions for purposes of 28 U.S.C. section 1738. Further, in addition to expressly extending full faith and credit to Indian tribes, the text of the Indian Child Welfare Act suggests that Indian tribes are not included in the definition of "territory or possession."

> The United States, every State, every territory or possession of the United States, and every tribe shall give full faith and credit to the public acts, records and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings to the same extent that such entities give full faith and credit to the public acts, records, and judicial proceedings of any other entity.

25 U.S.C. § 1911(d).

"[T]he decisions of lower federal courts are not binding on state courts, even on issues of federal law." *Dan Wiebold Ford, Inc. v. Universal Computer Services, Inc.*, 142 Idaho 235, 240, 127 P.3d 138, 143 (2005). "Such decisions are authoritative only if the reasoning is persuasive." *Id.* Although we value good relations with the tribal courts within Idaho, we are unable to continue to apply the strained construction of 28 U.S.C. section 1738 that we adopted in *Sheppard* in order to advance that important objective. Therefore, we overrule the holding in

*Sheppard* that tribal judgments are entitled to full faith and credit and adopt the reasoning of the Ninth Circuit in *Wilson* and hold that tribal court judgments are entitled to recognition and enforcement under principles of comity. We do not overrule *Sheppard* in its entirety. We will continue to apply its requirement that a party attacking the validity of a tribal court's judgment bears the burden of proving its invalidity. *Sheppard*, 104 Idaho at 7, 655 P.2d at 901.

**B. The tribal judgment imposing a civil penalty is not entitled to recognition in Idaho courts.**

The *Wilson* court analyzed the doctrine of comity as it applied to tribal judgments. *Wilson*, 127 F.3d at 810. The Ninth Circuit noted the unique position of tribal courts and noted that as a general principle, "courts should recognize and enforce tribal judgments." *Id.* However, the Ninth Circuit also pointed out a tribal judgment is not entitled to enforcement if the tribal court did not have both personal and subject matter jurisdiction or the defendant was not afforded due process of law. *Id.* The *Wilson* court also identified four equitable grounds upon which a court may decide not to recognize a tribal judgment. *Id.* Those grounds are:

(1) the judgment was obtained by fraud;

(2) the judgment conflicts with another final judgment that is entitled to recognition;

(3) the judgment is inconsistent with the parties' contractual choice of forum; or

(4) recognition of the judgment, or the cause of action upon which it is based, is against the public policy of the United States or the forum state in which recognition of the judgment is sought.

*Id.* We hold that *Wilson* accurately describes the circumstances when Idaho courts will recognize a foreign judgment pursuant to the doctrine of comity.

**1. The Tribal Court had jurisdiction over the Johnsons and the subject matter in this case.**

In order for a foreign judgment to be recognized as a matter of comity, the foreign court must have both subject matter and personal jurisdiction. *Id.* The district court held that the Johnsons had failed to exhaust their remedies by failing to challenge the Tribal Court's jurisdiction during those proceedings and therefore the Johnsons could not collaterally attack the Tribal Court's jurisdiction. We first examine the application of the exhaustion of tribal remedies doctrine and then address the question of jurisdiction.

**a. The exhaustion doctrine is not applicable in this case as there is no pending tribal litigation.**

5

The Johnsons did not challenge the Tribal Court's jurisdiction in that forum. The district court held that this failure meant that they were precluded from challenging the Tribal Court's jurisdiction by the exhaustion of tribal remedies doctrine. We find that the district court erred by applying the doctrine in this case.

The doctrine was recognized by the United States Supreme Court in *National Farmers Union Insurance Companies v. Crow Tribe of Indians*, 471 U.S. 845 (1985). In *National Farmers*, a member of the Crow Tribe brought suit in tribal court after he was injured on school property. *Id.* at 847. The school district and its insurer brought suit in federal court seeking an injunction to prevent the tribal court from enforcing a default judgment on the basis that the tribal court lacked jurisdiction. *Id.* The Supreme Court held that the federal courts should not hear the case until the school district had exhausted its remedies in the pending tribal action, *id.* at 857, stating "[w]e believe that examination should be conducted in the first instance in the Tribal Court itself." *Id.* at 856. In so holding, the Court noted that "[o]ur cases have often recognized that Congress is committed to a policy of supporting tribal self-government and self-determination." *Id.*

The Supreme Court has never specifically held that this doctrine applies to the states, and it is unclear whether it does. *Drumm v. Brown*, 716 A.2d 50, 61 (Conn. 1998). In *Drumm*, the Supreme Court of Connecticut analyzed the application of the exhaustion doctrine in state courts. *Id.* The reasoning in *Drumm* is persuasive as it analyzes the application of the exhaustion doctrine in a situation similar to the present case.

In *Drumm*, the lower court dismissed plaintiffs' case after finding that they had failed to exhaust tribal remedies. *Id.* at 52. The Connecticut Supreme Court reversed, holding that the exhaustion of tribal remedies doctrine applied to state courts in Connecticut, but the doctrine is only applicable when there is pending litigation in tribal court and "that exhaustion is not required in the absence of a pending action in the tribal court." *Id.* at 64. In support of this conclusion, the Connecticut court noted that in both Supreme Court cases discussing the doctrine a proceeding was pending in the tribal court. *Id.*; s*ee Nat'l Farmers Union Ins. Companies*, 471 U.S. 845; *see also Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9 (1987). In a more recent decision discussing the exhaustion doctrine, the Supreme Court reaffirmed that the exhaustion requirement is "prudential not jurisdictional." *Strate v. A-1 Contractors*, 520 U.S. 438, 451 (1997) (quoting *Iowa Mut. Ins. Co.*, 480 U.S. at 20 n.14.) "[T]he issue of whether a court has

6

exceeded its jurisdiction is always open to collateral attack in Idaho." *Andre v. Morrow*, 106 Idaho 455, 459, 680 P.2d 1355, 1359 (1984).

Here, the state court action was initiated by the Tribe to enforce a final judgment from the Tribal Court. There is no pending action before the Tribal Court. Because there is no pending action before the Tribal Court, the doctrine of exhaustion of tribal remedies is not applicable.

### b. The Johnsons have failed to meet their burden of establishing that the Tribal Court did not have jurisdiction.

The Johnsons do not contend that the Tribal Court did not have personal jurisdiction. Instead, they contend that the Tribal Court lacked subject matter jurisdiction for two reasons. First, the Johnsons argue that the dock is located on land that was not flooded when the Reservation was set aside in 1873 and is therefore not within the jurisdiction of the Tribe. Second, the Johnsons argue that the district court misapplied the decision in *Montana v. United States*, 450 U.S. 544 (1981), when it found that the Tribal Court had subject matter jurisdiction. The district court held that the Tribal Court had jurisdiction because the conduct had "some direct effect on the political integrity, the economic security, or the health and welfare of the tribe." (quoting *Montana*, 450 U.S. at 566).

"Tribal courts . . . cannot be courts of general jurisdiction . . . for a tribe's inherent adjudicative jurisdiction over nonmembers is at most only as broad as its legislative jurisdiction." *Nevada v. Hicks*, 533 U.S. 353, 367 (2001). The general rule from *Montana* is that tribes have no jurisdiction over non-Indians. *Id.* at 359–60. However, "Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands." *Montana*, 450 U.S. at 565. The *Montana* court identified two situations when a tribe may exercise jurisdiction over a non-member:

> A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

*Id.* at 565–66.

Both parties agree that the first exception does not apply. The district court held that the second *Montana* exception applied in this case.

7

We first consider ownership of the riverbed, as the ownership of the land may sometimes be a dispositive factor. *Hicks*, 533 U.S. at 360. The Johnsons argue that the submerged land in question is located above the high water mark that existed in 1873 when the Reservation was established. The district court did not explicitly decide this issue in its analysis. Nevertheless, we affirm its decision because the Johnsons have failed to present any evidence that would support a finding that the Tribe does not own the riverbed.

Both parties focus on the United States Supreme Court's decision in *Idaho v. United States*, 533 U.S. 262 (2001). There, the Supreme Court held that when the Reservation was set aside in 1873 the submerged lands of Lake Coeur d'Alene and the St. Joe River were included in the land set aside. *Id*. at 279–81. The order of the federal district court which led to the Supreme Court's decision appears to support the Tribe's contention that the Johnsons' dock and pilings are located on tribal land:

> Title is quieted in favor of the United States, as trustee, and the Coeur d'Alene Tribe of Idaho, as the beneficially interested party of the trusteeship, to the bed and banks of the Coeur d'Alene Lake and the St. Joe River lying within the current boundaries of the Coeur d'Alene Indian Reservation.

*United States v. Idaho*, 95 F. Supp. 2d 1094, 1117 (D. Idaho 1998). Despite this broad language, the Johnsons argue that the decision by the Supreme Court was limited to submerged lands as they existed in 1873. The Johnsons base this argument on a footnote from *United States v. Idaho*, 210 F.3d 1067 (9th Cir. 2000). There, the Ninth Circuit noted:

> In construing the parties' pleadings, we bear in mind that the current physical situation in and around [Heyburn State] Park differs from the situation that existed in 1873, at the time of the executive reservation, and in 1908 and 1911, the years, respectively, that the Park was authorized and conveyed to the State. Due to the construction of a dam, three small lakes have combined with the Lake into one large body of water. We read the United States' complaint in light of the physical situation as it existed prior to the construction of the dam.

*Id.* at 1079 n.18.

We need not consider whether the scope of the Supreme Court's ruling was limited by the footnote quoted by the Johnsons. That is because the Johnsons have failed to meet their burden of establishing that they have title to the lands lying between the high water mark following construction of the dam and that existing in 1873.

Following the creation of the Reservation, the lands on both sides of the St. Joe River within the boundaries of the Reservation were held in trust by the United States for the use and

8

benefit of the Tribe. A transfer of such lands conveys title only to the high water mark. *Montana Power Co. v. Rochester*, 127 F.2d 189, 192 (9th Cir. 1942). Thus, in order for the Johnsons to advance a colorable claim to ownership of the submerged lands above the 1873 high water mark, they bore the burden of demonstrating that the tribal lands were alienated prior to the construction of the dam. They did not do so. Accordingly, we presume that the lands continue to be held by the United States in trust for the benefit of the Tribe.

In *Hicks*, the Supreme Court noted: "[t]he ownership status of land. . . is only one factor to consider in determining whether regulation of the activities of nonmembers is necessary to protect tribal self-government or to control internal relations." *Hicks*, 533 U.S. at 360 (internal quotes omitted). However, "[i]t may sometimes be a dispositive factor." *Id.* In *Hicks*, the Supreme Court held that a tribe did not have jurisdiction over state officers who were executing a search warrant on tribal land. *Id.* Although the Supreme Court deemed the fact that the search took place on tribal land to be significant, it was not sufficient to outweigh the State's interest in enforcing its criminal laws. *Id.* at 370. "[W]e acknowledge that tribal ownership is a factor in the *Montana* analysis, and a factor significant enough that it 'may sometimes be. . . dispositive.' " *Id.* (internal citations omitted). "We simply do not find it dispositive in the present case, when weighed against the State's interest in pursuing off-reservation violations of its laws." *Id.* In a more recent case, the Ninth Circuit held that tribal ownership was a dispositive factor conferring jurisdiction in the absence of competing State interests. *Water Wheel Camp Recreational Area, Inc. v. LaRance*, 642 F.3d 802, 814 (2011). "[W]here the non-Indian activity in question occurred on tribal land, the activity interfered directly with the tribe's inherent powers to exclude and manage its land, and there are no competing state interests at play, the tribe's status as landowning is enough to support regulatory jurisdiction without considering *Montana*." *Id.* "Finding otherwise would contradict Supreme Court precedent establishing that land ownership may sometimes be dispositive and would improperly limit tribal sovereignty without clear direction from Congress." *Id.*

In this case, the ownership of the land is dispositive. Unlike the situation in *Hicks*, the State here does not have any interests that would weigh against the Tribal Court exercising jurisdiction. This case is similar to *Water Wheel* in that there are no competing State interests. We hold that the Johnsons have failed to meet their burden of demonstrating that the Tribal Court lacked subject matter jurisdiction.

9

## 2. The Johnsons were afforded due process in the Tribal Court.

In order to recognize the tribal judgment through comity, the Johnsons must have been afforded due process in the Tribal Court. *Wilson v. Marchington*, 127 F.3d 805, 810 (9th Cir. 1997). The Johnsons contend that they were not afforded due process because the Tribal Court is dominated by the Tribe and was thus biased against them.

Due process requires that parties be given notice of proceedings and an opportunity to be heard. *Anderson v. Spalding*, 137 Idaho 509, 516, 50 P.3d 1004, 1011 (2002). The Johnsons argue that because the Tribal Court is biased they did not have a meaningful opportunity to be heard. In support of this argument, the Johnsons quote from *Wilson*:

> Due process, as that term is employed in comity, encompasses most of the Hilton factors, namely that there has been opportunity for a full and fair trial before an impartial tribunal that conducts the trial upon regular proceedings after proper service or voluntary appearance of the defendant, and that there is no showing of prejudice in the tribal court or in the system of governing laws. Further, as the Restatement (Third) noted, evidence "that the judiciary was dominated by the political branches of government or by an opposing litigant, or that a party was unable to obtain counsel, to secure documents or attendance of witnesses, or to have access to appeal or review, would support a conclusion that the legal system was one whose judgments are not entitled to recognition." Restatement (Third) § 482 cmt. b.

*Wilson*, 127 F.3d at 811. The Johnsons argue that the Tribal Court is dominated by the Tribe which is the plaintiff in this case.

A similar argument was advanced by the appellant in *Iowa Mutual Insurance Company v. LaPlante*, 480 U.S. 9 (1987). There, the appellant sought to avoid application of the doctrine of exhaustion of tribal remedies on the basis that the tribal court was biased and incompetent. *Id*. at 18–19. Rejecting this argument, the Supreme Court noted that it "had rejected similar attacks on tribal court jurisdiction in the past." *Id.* at 19. The Supreme Court explained that allegations of incompetence and bias are not persuasive and that acceptance of such claims "would be contrary to the congressional policy promoting the development of tribal courts. *Id.* "Moreover, the Indian Civil Rights Act, 25 U.S.C. § 1302, provides non-Indians with various protections against unfair treatment in the tribal courts." *Id.*

Here, the Johnsons assert that the Tribal Court is dominated by the Tribe. They point to the tribal law stating that the Tribe has jurisdiction over the river and to the amount of the fine imposed against them. As discussed above, the Johnsons have failed to show that the Tribe does

10

not have jurisdiction over the bed of the St. Joe River adjoining their property. Further, while the fine was large, it was only one-fifth of that authorized by the tribal code. CTC 44-24.01 (authorizing a fine of $500 per day for unlicensed encroachments). We hold that the Johnsons have failed to show that the Tribal Court was biased.

Further, the Johnsons had more than sufficient notice and opportunity to be heard in the Tribal Court. The record shows the Johnsons were informed of the proceedings on four occasions before default judgment was entered. Despite this, they elected to simply ignore the proceedings in Tribal Court. The Johnsons were not denied due process.

### 3. The penal law rule precludes the recognition of part of the Tribal Court judgment.

The Johnsons argue that even if this Court finds that the Tribal Court had jurisdiction and the Johnsons were given due process it should still not recognize the judgment based on the penal law rule. Because the district court was applying the rule we pronounced in *Sheppard*, it did not err in finding the penal law rule inapplicable. However, because *Sheppard* was wrongly decided we hold that the penal law rule is applicable to the tribal court judgment in this case.

"The courts of no country execute the penal laws of another." *The Antelope*, 23 U.S. 66, 123 (1825). "The test whether a law is penal. . . is whether the wrong sought to be redressed is a wrong to the public or a wrong to the individual. . . ." *Huntington v. Atrill*, 146 U.S. 657, 668 (1892).

> "The rule that the courts of no country execute the penal laws of another applies not only to prosecutions and sentences for crimes and misdemeanors, but to all suits in favor of the state for the recovery of pecuniary penalties for any violation of statutes for the protection of its revenue, or other municipal laws, and to all judgments for such penalties."

*Id.* at 671 (quoting *Wisconsin v. Pelican Ins. Co.*, 127 U.S. 265, 290 (1888). "In short, the label 'civil' does not strip a remedy of its penal nature." *Yahoo! Inc. v. La Ligue Conte Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1219 (9th Cir. 2006).

In this case the judgment comprises two parts. The first part is a civil penalty of $17,400. The second part is a declaration that the Tribe has the right to remove the offending encroachment. The civil penalty is not enforceable under principles of comity. However, the penal law rule does not prevent courts from recognizing declaratory judgments of foreign courts. Therefore, we vacate the district court's judgment to the extent that it recognized the Tribal

11

Court's judgment imposing the civil penalty of $17,400. We affirm the judgment recognizing the Tribal Court judgment regarding the Tribe's right to remove the dock and pilings.

## C. Costs on appeal

As each party has prevailed in part, we do not award costs on appeal.

## IV. CONCLUSION

We affirm in part, reverse in part, and remand for entry of an amended judgment consistent with this decision. No costs on appeal.

Chief Justice BURDICK and Justices EISMANN, JONES and BRODY **CONCUR.**