**Electronically Filed
Supreme Court
SCWC-18-0000301
05-MAR-2020
09:15 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

In re Sanctions Against EARLE A. PARTINGTON and
ROBERT PATRICK MCPHERSON, Petitioners/Real Parties in Interest,
in
STATE OF HAWAI'I, Respondent/Plaintiff-Appellee,
vs.
MAGGIE KWONG, Petitioner/Defendant-Appellant.
_____

SCWC-18-0000301

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-18-0000301; CASE NO. 1DTA-17-02539)

MARCH 5, 2020

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, JJ.,
WITH WILSON, J., DISSENTING.

OPINION OF THE COURT BY, McKENNA, J.

## I.   Introduction

This case concerns whether the Intermediate Court of Appeals ("ICA") abused its discretion by (1) sanctioning attorneys Robert Patrick McPherson ("McPherson") and Earl A. Partington ("Partington") (sometimes collectively referred to as "Counsel") each in the amount of $50.00 based on Hawai'i Rules of

Appellate Procedure ("HRAP") Rule 51 (2010) ("sanctions orders") and by denying Counsel's motion to reconsider the sanctions orders; and (2) whether the Office of Disciplinary Counsel ("ODC") was authorized to thereafter send letters to Counsel indicating it was administratively disposing of the matter and that the sanctions orders could be used as evidence of aggravation in any future disciplinary proceedings.

As explained below, we hold (1) that the ICA did not abuse its discretion by imposing sanctions on Counsel and denying the motion for reconsideration; (2) but that the ODC was without authority to treat the sanctions orders as administrative dispositions that might be used in the future as evidence of a pattern of conduct in aggravation.

We therefore affirm the ICA's sanctions orders against Counsel, but also order that the clerk of the court transmit this opinion to the ODC for appropriate action consistent with this opinion.

## II.  Background

## A.  District court proceedings and notice of appeal

On July 17, 2017, the State of Hawai'i ("State") charged Maggie Kwong ("Kwong") via a complaint with "operating a vehicle under the influence of an intoxicant" ("OVUII") in violation of Hawai'i Revised Statutes ("HRS") § 291E-61(a)(1) (Supp. 2014).

2

After a jury-waived bench trial on March 14, 2018,[1] the District Court of the First Circuit ("district court") found Kwong guilty as charged and sentenced Kwong to pay a fine and various fees, as well as to attend a substance abuse program. Upon McPherson's request, the district court delayed sentencing with respect to Kwong's license revocation until April 13, 2018.

On March 14, 2018 the district court entered a judgment of guilt and Kwong's partial sentence. On its face, the judgment indicated that further sentencing on "LR," which appears to be shorthand for "License Revocation," would take place on April 13, 2018.[2] Before that date, however, on April 3, 2018, a notice of appeal was filed by McPherson and Pedric Arrisgado ("Arrisgado"). At the April 13, 2018 sentencing hearing, Arrisgado informed the district court of Kwong's appeal. The district court did not proceed to sentencing with respect to the license revocation and stayed Kwong's previously imposed partial sentence pending appeal.

On May 29, 2018, the ICA filed a notice indicating Kwong's jurisdictional statement was due on June 8, 2018 and that her opening brief was due on July 9, 2018. On June 8, 2018,

---

[1] The Honorable William M. Domingo presided.

[2] The district court used the standard "Notice of Entry of Judgment and/or Order and Plea/Judgment" form, which is also used for final judgments. This could create confusion as to whether a judgment is partial or final.

Partington entered an appearance for Kwong and filed a jurisdictional statement asserting the ICA had appellate jurisdiction over Kwong's appeal.  On April 12, 2018, McPherson had filed a request for transcripts, and various transcripts were filed on June 12, 2018.

Counsel did not, however, file an opening brief on July 9, 2018.  Instead, two days later, on July 11, 2018, Counsel submitted an amended statement of jurisdiction pointing out that appellate jurisdiction was lacking because sentencing had not been completed.[3]  Counsel's amended statement of jurisdiction stated in relevant part:

> The Judgment filed below in the District Court of the First Circuit on March 14, 2018 . . . is not a final judgment. Sentencing was not completed on March 14, 2018, as final sentencing on Defendant's license revocation was not held until April 13, 2018, ten days after the notice of appeal was filed[.]  No final judgment has ever been filed. Defendant's Notice of Appeal was timely filed pursuant to Rule 4(b)(1) of the Hawai[']i Rules of Appellate Procedure on April 3, 2018[.]
>
> . . . .
>
> The Judgment below did not dispose of all the claims against all the parties as sentencing was not complete.
>
> . . . .

---

[3]   HRS § 641-12(a) (2016) provides:

> (a) Appeals upon the record shall be allowed from all final decisions and final judgments of district courts in all criminal matters.  Such appeals may be made to the intermediate appellate court, subject to chapter 602, whenever the party appealing shall file notice of the party's appeal within thirty days, or such other time as may be provided by the rules of the court.

> Further sentencing as to Defendant's license revocation did not take place until April 13, 2018. The sentence has been stayed pending appeal . . . . <u>This case must be remanded to the district court for entry of a final judgment.</u>

(Emphasis added.) Thus, Counsel alerted the ICA to the lack of appellate jurisdiction and stated that the case must be remanded to the district court for entry of a final judgment.

## B.   Order to show cause, Counsel's response, and order for sanctions

Six days later, on July 17, 2018, the ICA clerk's office sent a memorandum to Counsel, which stated:

> We docketed the record on appeal in the above-entitled case on 29-May-2018. The time for filing the appellant's opening brief expired on 09-Jul-2018.
>
> This is to inform you that the matter will be called to the attention of the Court on 27-Jul-2018 for such action as the court deems proper, and the appeal may be dismissed. See Hawai'i Rules of Appellate Procedure (HRAP) Rule 30.[4]
>
> Any request for relief from this default should be made by motion. See HRAP Rules 26 and 27.

Counsel did not file anything in direct response to the July 17, 2018 memorandum from the ICA.

---

[4]   HRAP Rule 30 (2015) provides in relevant part:

> When the brief for appellant is not filed within the time required, the appellate clerk shall forthwith give notice to the parties that the matter will be called to the attention of the appellate court on a day certain for such action as the appellate court deems proper and that the appeal may be dismissed. When the brief of an appellant is otherwise not in conformity with these Rules, the appeal may be dismissed or the brief stricken and monetary or other sanctions may be levied by the appellate court . . . .

Almost six months later, on January 7, 2019, the ICA filed an order to show cause directed at Counsel, which stated as follows:

> (1) On April 3, 2018, [Kwong] filed the notice of appeal, through [McPherson];
> (2) On May 29, 2018, the district court clerk filed the record on appeal, and the appellate clerk notified Kwong, through McPherson, that, among other things, the opening brief was due on or before July 9, 2018;
> (3) On June 8, 2018, [Partington] entered an appearance for Kwong;
> (4) Kwong failed to file the opening brief, or request an extension of time;
> (5) On July 17, 2018, the appellate clerk notified Kwong, through McPherson and Partington,[5] that the time for filing the opening brief had expired, the matter would be called to the court's attention on July 27, 2018, for appropriate action, which could include dismissal of the appeal, pursuant to Hawai'i Rules of Appellate Procedure Rule 30, and Kwong may request relief from default by motion; and
> (6) Kwong took no further action in this appeal.
>
> Therefore, IT IS HEREBY ORDERED that within ten (10) days from the date of this order, [McPherson] and [Partington] each shall show cause, jointly or separately, in the form of a declaration, affidavit, or other sworn statement, indicating why they failed to file the opening brief, or request an extension of time. Failure to timely respond to this order or to show good cause may result in sanctions.

Counsel timely responded to the order to show cause on January 17, 2019 as follows:

> In State v. Kilborn, 109 Haw. 435, 442, 127 P.3d 95, 102 (App.2005), this court held that
>
>> Judgments of conviction entered in district courts may not be appealed unless they are final. Judgments of conviction are not final unless they include the final adjudication and the final sentence. In the instant case, the sentence imposed was not the final sentence

_____

5    The notice of default was also addressed to Arrisgado, who had also appeared as an attorney for Kwong in the notice of appeal. The ICA did not, however, include Arrisgado in the later order to show cause or impose sanctions on Arrisgado.

> because the district court expressly left often the possibility that its sentence of Kilborn might include an order requiring Kilborn to pay restitution. The court did not finally decide whether it would order Kilborn to pay restitution and, if so, in what amount. Consequently, the December 5, 2003 Judgment is not final and, because it is not final, it is not appealable.
>
> On July 11, 2018, Kwong filed an Amended Statement of Jurisdiction noting that no judgment as required by <u>Kilborn</u> has ever been filed in this case. Therefore, Kwong's attorneys have been waiting for this court to dismiss this appeal and remand this case to the district court for entry of a judgment. Her attorneys were not aware that any more was needed to be done than that. The filing of any brief would have been a meaningless act.

On February 13, 2019, the ICA entered a sanctions order, ruling that Counsel's January 17, 2019 response to the January 7, 2019 order to show cause failed to demonstrate good cause for their failure to file an opening brief or request an extension of time. The ICA noted that the amended statement of jurisdiction filed after the "default on the opening brief" was not a motion to dismiss the appeal for lack of appellate jurisdiction. The ICA pointed out that it was not until Counsel were ordered to show cause that Counsel represented Kwong's appeal should be dismissed for lack of jurisdiction. The ICA then ordered as follows:

> (1) Pursuant to Hawai'i Rules of Appellate Procedure Rule 51,[6] Earle A. Partington and R. Patrick McPherson are sanctioned in the amount of $50.00 each.

_____
6    HRAP Rule 51 provides in relevant part:

> Any attorney of record or party in a case, who fails to comply with any of the provisions of the Hawai'i Rules of Appellate Procedure . . . or any order of the court

(continued. . .)

7

(2) Separate checks in the full amount, payable to the
State Director of Finance, along with a copy of this order,
shall be deposited with the Supreme Court Clerk's Office
within ten days from the date of this order.
(3) A declaration of Counsel, jointly or separately,
attesting to the payment shall be filed within ten days
from the date of this order.
(4) The sanction shall be paid by Counsel personally and
without reimbursement.
(5) Failure to comply with this order may result in
additional sanctions.

Then, on February 22, 2019, the ICA entered an order dismissing Kwong's appeal for lack of appellate jurisdiction, because the judgment "on its face" indicated Kwong's sentencing was incomplete.  The ICA noted that because the notice of appeal was jurisdictionally defective, filing the notice had not transferred jurisdiction from the trial court to the appellate court, quoting State v. Ontiveros, 82 Hawai'i 446, 449, 923 P.2d 388, 391 (1996).

## C. Motion for reconsideration

On February 22, 2019, Counsel filed a motion for reconsideration of the sanctions order.  Counsel asserted the ICA incorrectly stated that Counsel had not represented to the ICA that the appeal should be dismissed for lack of jurisdiction until their January 17, 2019 response to the order to show cause.  Counsel contended their July 11, 2018 amended statement

(. . . continued)
shall be subject to monetary or other sanctions by
the appellate court before which such case is pending, such
sanctions to be levied by order of the appellate court or
by order of any judge or justice thereof.

of jurisdiction had set forth the lack of appellate jurisdiction, and that they "are aware of no rule requiring them to timely inform this court of the lack of jurisdiction more than once."

The ICA denied the motion for reconsideration on February 28, 2019.[7] The ICA noted that the amended statement of jurisdiction did not request the appeal be dismissed, but rather stated the ICA must remand the case for entry of a final judgment, which was a different remedy than dismissal for lack of jurisdiction. The ICA also noted that the amended statement of jurisdiction had been filed after the default of the opening brief.

After the denial of the motion for reconsideration, on February 28, 2019 and March 1, 2019, McPherson and Partington each paid their $50.00 sanctions.

D.  **Application for writ of certiorari**

On March 6, 2019, Counsel timely filed an application for writ of certiorari posing one question:

> Whether the ICA gravely erred in sanctioning Counsel and refusing reconsideration for Counsel's failure to request dismissal in Kwong's amended statement of jurisdiction

---

[7]     The ICA construed the motion for reconsideration as a motion by Partington on his behalf alone, and not also for McPherson, because Partington electronically signed the motion for reconsideration alone, as attorney for Kwong. As the motion for reconsideration also listed McPherson, and, in any event, McPherson was not required to file a motion for reconsideration in order to be included in the certiorari application, we do not further address this issue.

> wherein Kwong repeatedly informed the ICA that there was no judgment below and asked that the case be remanded to the district court for entry of judgment which the [ICA] refused to do[.]

(Capitalization altered.)

## E.    Letters from the Office of Disciplinary Counsel

On March 21, 2019, Counsel filed a supplemental memorandum in support of their application attaching letters dated March 14, 2019 they had received from ODC.  The letters are discussed in Section IV.B, infra.

## III.    Standards of Review

## A.    Order for sanctions

Sanctions imposed under statute, court rule, or the trial court's inherent powers are reviewed for an abuse of discretion. Gap v. Puna Geothermal Venture, 106 Hawai'i 325, 331, 104 P.3d 912, 918 (2004).  The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.  Id.

## B.    Motion for reconsideration

A court's ruling on a motion for reconsideration is also reviewed for an abuse of discretion.  State v. Oughterson, 99 Hawai'i 244, 253, 54 P.3d 415, 424 (2002).

## C.   Questions of law

Questions of law are reviewable de novo under the right/wrong standard of review.  State v. Baranco, 77 Hawai'i 351, 355, 884 P.2d 729, 733 (1994).

### IV.   Discussion

## A.   The ICA did not abuse its discretion by imposing sanctions pursuant to HRAP Rule 51 and denying the motion for reconsideration

### 1.   Contrary to Counsel's assertion, Joshua is inapplicable

On certiorari, Counsel maintain that although they did not expressly ask for dismissal of the appeal, they "did exactly what this court said they should do [in State ex rel. Office of Consumer Protection v. Joshua, 141 Hawai'i 91, 405 P.3d 527 (2017)] – move to remand this case to district court for the entry of a judgment."  Counsel cite to State v. Nicol, 140 Hawai'i 482, 488, 403 P.3d 259, 265 (2017), for the proposition that "[t]he rule of finality for jurisdiction to appeal is the same in criminal case[s]."  Counsel contend this court should therefore reverse the ICA's order for sanctions and order the State Director of Finance to refund Counsel's sanction payments.

We reject Counsel's contention that the ICA should have remanded the case to the district court for an entry of final judgment based on Joshua.

11

In Joshua, we prospectively held that when a party to a circuit court civil case timely appeals a purported final judgment later determined not to meet finality requirements set out in Jenkins v. Cades Schutte Fleming & Wright, 76 Hawai'i 115, 119, 869 P.2d 1334, 1338 (1994) (per curiam), "rather than dismiss the appeal, the ICA must temporarily remand the case to the circuit court 'in aid of its jurisdiction' pursuant to HRS § 602-57(3) (2016) for entry of an appealable final judgment with a direction to the circuit court to supplement the record on appeal with the final judgment." Joshua, 141 Hawai'i at 93, 405 P.3d 529.

By its clear language, Joshua only applies to purported "final judgments" in circuit court civil cases, which are so titled and intended by circuit court judges, but fail to meet Jenkins finality requirements. Its holding does not apply to any other kind of judgment, especially not to judgments that were never intended to be "final judgments." Thus, Counsel's argument that they "did exactly what this court said they should do – move to remand this case to district court for the entry of a judgment," is devoid of merit.[8]

---

[8]  In addition, Counsel never "moved" the ICA to remand the case to the district court for entry of final judgment as represented; if Counsel had clearly done so, the ICA could have denied the motion at the time.

12

In addition, to the extent Counsel may be suggesting that, through this case, we expand the Joshua requirement of a remand for entry of final judgment to district court criminal judgments, we decline to do so for the following reasons.

First, a remand for entry of final judgment under the circumstances of this case would contravene HRAP Rule 4(b)(4) (2020), which governs "Premature Notice[s] of Appeal" in criminal cases, and provides:

> (b)    Appeals in criminal cases.
> . . . .
> (4)   *Premature Notice of Appeal*.  A notice of appeal filed after the announcement of a decision, sentence or order but before entry of the judgment or order shall be deemed to have been filed on the date such judgment or order is entered.

(Emphasis added.)  Applying this rule, the April 9, 2018 premature notice of appeal in this case could not have been deemed to have been filed on a later date because the sentence on license revocation had not been "announced" as of the April 9, 2018 filing of the notice of appeal.  Thus, pursuant to HRAP Rule 4(b)(4), the ICA would not have been able to "'aid . . . its jurisdiction' pursuant to HRS § 602-57(3) (2016)" because it would not have been able to acquire appellate jurisdiction even if it had ordered a remand.  Joshua, 141 Hawai'i at 93, 405 P.3d

13

at 529.  In order for appellate jurisdiction to exist, a new notice of appeal would have been required.[9]

In comparison, Joshua did not implicate concerns under HRAP Rule 4(a)(2), which governs "Premature filing of appeal[s]" in civil cases, and provides as follows:

> If a notice of appeal is filed after announcement of a decision but before entry of the judgment or order, such notice shall be considered as filed immediately after the time the judgment or order becomes final for the purpose of appeal.

In other words, in the circuit court civil cases for which Joshua requires remand for entry of Jenkins-compliant final judgments, not only have "decision[s]" been "announce[d]," the circuit courts have already entered purported "final judgments" termed as such.  Thus, not only is Joshua consistent with HRAP Rule 4(a)(2), it does not impose a significant administrative burden on the ICA.[10]

---

[9]  We note that, as stated by the ICA in its sanctions orders, Kwong's premature notice of appeal did not deprive the district court of jurisdiction, Ontiveros, 82 Hawai'i at 449, 923 P.2d at 391, and the district court retained jurisdiction to proceed with Kwong's sentencing.  If, however, the district court had proceeded on the license revocation matter on April 13, 2018, and had entered an appealable "final judgment," but another notice of appeal was not filed within thirty days thereafter, the thirty-day deadline for filing a notice of appeal under HRAP Rule 4(b)(1) would have passed by the time this appeal was dismissed by the ICA on February 22, 2019.

[10]  The issue of whether Joshua should be extended to premature notices of appeal from district court criminal cases that may be consistent with HRAP Rule 4(b)(4) is not before us at this time, and we do not address it.  We do note, however, that only a small percentage of the 3,334 "civil actions" filed in state circuit courts in fiscal year 2019 will result in "final judgments" subject to Joshua's remand requirement, but a significantly higher percentage of the 27,932 "criminal actions" filed in state district courts could result in "judgments" being filed that do not meet Kilborn finality (continued. . .)

14

Second, as we noted in Joshua, Jenkins finality requirements resulted in numerous dismissals of appeals from intended and purported "final judgments." Joshua, 141 Hawai'i at 97 n.9, 405 P.3d at 533 n.9. Dismissals based on non-compliance with Jenkins finality requirements were sometimes due to circuit court civil cases involving numerous parties and claims.[11] As compared to circuit court civil judgments, however, similar issues have not arisen based on finality requirements for district court criminal judgments.[12]

Finally, and as noted earlier, Joshua applied to circuit court civil judgments so titled and intended to be "final

_____

(. . . continued)
requirements for appellate purposes. See, State of Hawai'i Judiciary, 2019 Annual Report Statistical Supplement 12, 25 (2019), available at https://perma.cc/CN89-LYU8. Thus, requiring the ICA to remand for entry of final judgments in district court criminal cases in which a final decision has been "announced" but a premature notice is filed before entry of final judgment could result in a significant administrative burden on the ICA, because (1) premature notices of appeal could be filed in a significant number of district criminal cases; and (2) in those cases, the ICA would need to ascertain whether remand for entry of final judgment would be consistent with HRAP Rule 4(b)(4).

[11] For example, in circuit court civil cases, there are sometimes many parties in addition to a plaintiff and a defendant, such as additional plaintiffs, additional defendants, third-party and additional third-party defendants, cross-claim and additional cross-claim defendants, and counterclaim and additional counterclaim defendants. All of those parties can assert claims against each other; some claims are asserted against some parties, but not others. The circuit courts must then endeavor to provide detailed dispositions of each claim in final judgments.

[12] Although district court criminal judgments can involve more than one defendant with more than one charge, the ICA's 1995 opinion in Kilborn made clear that "[j]udgments of conviction are not final [for purposes of HRS § 641-12(a), see note 3, supra] unless they include the final adjudication and the final sentence." Kilborn, 109 Hawai'i at 442, 127 P.3d at 102.

15

judgments" by circuit court judges. In comparison, this appeal arose because a notice of appeal was filed by McPherson and Arrisgado before Kwong's sentencing was completed; on its face, the March 14, 2018 judgment of guilt, which only included Kwong's partial sentence, never purported to be a "final judgment" meeting Kilborn requirements.

Therefore, we decline to expand Joshua to district court criminal cases.

## 2. The ICA did not abuse its discretion in imposing the sanctions orders, which were grounded on HRAP Rule 51, and in denying the motion for reconsideration

Counsel discuss the procedural history, summarized in Sections II.A through C above, and contend the ICA "exhalt[ed] form over substance" when it imposed sanctions and denied the motion for reconsideration on the grounds the July 11, 2018 amended statement of jurisdiction did not suggest the ICA should dismiss the appeal for lack of jurisdiction, but rather stated that the "case must be remanded to the district court for entry of a final judgment."

As noted above, a court's imposition of sanctions is reviewed for an abuse of discretion, and when a sanctions order is based on a violation of a court rule, there is an abuse of discretion if the court bases its ruling on an erroneous view of the law or erroneous assessment of the evidence. Gap, 106

Hawai'i at 331, 104 P.3d at 918. If a sanction is not imposed under a statute or court rule, however, a court may not invoke its inherent powers to sanction an attorney without a specific finding of bad faith. Bank of Hawaii v. Kunimoto, 91 Hawai'i 372, 389, 984 P.2d 1198, 1215 (1999) (citations omitted).

The ICA's February 13, 2019 sanctions orders were explicitly based on HRAP Rule 51, entitled "Sanctions," which provides:

> Any attorney of record or party in a case, who fails to comply with any of the provisions of the Hawai'i Rules of Appellate Procedure, the Hawai'i Electronic Filing and Service Rules, or any order of the court shall be subject to monetary or other sanctions by the appellate court before which such case is pending, such sanctions to be levied by order of the appellate court or by order of any judge or justice thereof.

It is undisputed that Kwong's opening brief was not timely filed. Upon filing a notice of appeal, pursuant to HRAP Rule 28(b) (2016), an appellant must file an opening brief within forty days after the filing of the record on appeal. The record on appeal in this case was filed on May 29, 2018, making Kwong's opening brief due July 9, 2018. The ICA's May 29, 2018 notice expressly notified Counsel that Kwong's opening brief was due on that date.

Although it would not have made sense under the circumstances for Counsel to file an opening brief by the July 9, 2018 due date, Counsel did not file their amended statement

17

of jurisdiction indicating there was no appealable final judgment until two days after the due date. In it, Counsel incorrectly asserted, "This case must be remanded to the district court for entry of a final judgment."[13]

Counsel did not even file anything in direct response to the July 17, 2018 memorandum from the ICA. Counsel's January 17, 2019 response to the ICA's January 7, 2019 order to show cause then quoted Kilborn, and stated that based on their July 11, 2018 amended statement of jurisdiction indicating no final judgment had been filed, "Kwong's attorneys have been waiting for this court to dismiss this appeal and remand this case to the district court for entry of a judgment." Contrary to this assertion, Counsel had never previously indicated that dismissal of the appeal was required due to a lack of appellate jurisdiction.[14] In fact, on certiorari, they make clear that the statement in their amended statement of jurisdiction that "[t]his case must be remanded to the district court for entry of

---

[13] See Section IV.A.1, supra.

[14] As discussed, under the circumstances of this case, dismissal of the appeal, not remand for entry of final judgment, was required. Sentencing regarding license revocation was never completed so a final judgment was not entered.

Even when a court lacks subject matter jurisdiction, however, it retains jurisdiction to impose sanctions in order to "maint[ain] orderly procedure." See Willy v. Coastal Corp., 503 U.S. 131, 137-39 (1992) (affirming district court's imposition of Rule 11 sanctions despite lack of subject matter jurisdiction).

a final judgment" was intended to mean exactly what it said: Counsel were demanding that the ICA remand the case for entry of a final judgment, rather than dismiss the appeal.

The ICA's sanctions orders also noted that the amended statement of jurisdiction was not a motion to dismiss, and it was not until Counsel were ordered to show cause that Counsel represented that the appeal should be dismissed for lack of appellate jurisdiction, a position they again now contravene on certiorari, arguing that the ICA should have remanded the case for entry of a judgment pursuant to Joshua.

At bottom, nothing was filed by the due date of the opening brief and Counsel could have and should have alerted the ICA to the lack of appellate jurisdiction well before that date, which would have prevented the appellate clerk's July 17, 2018 memorandum and the ICA's January 7, 2019 order to show cause.

For all of these reasons, the ICA did not abuse its discretion in entering the sanctions orders against Counsel. The ICA also did not abuse its discretion by denying the motion for reconsideration, which did not present a basis in law as to why sanctions should not be imposed.  See HRAP Rule 40(b) (2000) (a motion for reconsideration "shall state . . . the points of law or fact that the moving party contends the court has overlooked or misapprehended . . . .").

19

**B.** **The ODC was without authority to treat the sanctions orders as administrative dispositions that might be used in the future as evidence of a pattern of conduct in aggravation**

We now turn to address the March 14, 2019 ODC letters to Counsel. The letters stated as follows:

> This office has been informed by the Intermediate Court of Appeals ("ICA") that you were sanctioned in the above related case for violation of an applicable rule of court, or appellate procedure.[1] The Hawai'i Rules of Professional Conduct ("HRPC") provides that "[a] lawyer shall not: . . . (e) knowingly disobey an obligation under the rules of a tribunal . . ." Thus, the sanctioned conduct is likely "misconduct" within the disciplinary rules of the Hawai'i Supreme Court.
>
> However, we also note that the ICA order did not contain a specific instruction for ODC to review your conduct for possible institution of disciplinary charges (which it often does). Thus, we chose to deem this referral as an informational event, and elect to dispose of the matter administratively. Administrative disposition means that this event is not docketed as a "disciplinary complaint" and thus no formal record of disciplinary history will be created.
>
> However, a record of this administrative disposition will be maintained in our internal files. Should the ICA, or other complainant, allege similar or more serious misconduct in the future, this administrative disposition might be used as evidence of a pattern of conduct in aggravation.[2] Thus it would behoove you to keep this an isolated or "one-off" event.
>
> [1] Monetary sanctions are permitted by, inter alia, HRAP Rule 51.
>
> [2] See e.g.,: ABA Standards for Imposing Lawyer Sanctions (rev. 1992), Standard 9.22(c).

Each letter contained an assigned ODC case number in the headings.

The record does not contain any referral from the ICA to the ODC of the sanctions orders. The ODC listed ICA as the "complainant" in each of the letters. A "complainant" is

defined by the Rules of the Disciplinary Board ("RDB") Rule 3(d) (2011) as "a person who has expressed dissatisfaction with an Attorney to the ODC."  It is unclear from the record whether the ICA actually expressed dissatisfaction with Counsel to the ODC and, if so, how.

In any event, the ODC indicated it was treating the sanctions orders as "informational event[s]" and that it was disposing of the matter administratively, resulting in an "administrative disposition."  The Rules of the Supreme Court of Hawai'i ("RSCH") Rule 2.6(b)(2) (2013) requires, however, that an attorney be afforded an opportunity to be heard prior to the ODC recommending or undertaking <u>any</u> disposition:

> Except in matters requiring dismissal because the complaint is frivolous on its face or falls outside the Board's jurisdiction, no disposition shall be recommended or undertaken by [Disciplinary] Counsel until the accused attorney shall have been afforded the opportunity to state [their[15]] position with respect to the allegations against [them].

Counsel were not afforded an opportunity to state their positions to the ODC with respect to the allegations against them.  Thus, the ODC's "administrative dispositions" are not authorized by RSCH Rule 2.6(b).

---

[15]     "They, them, and their" are used as singular pronouns when (1) the gender identity of the person referred to is unknown or immaterial; or (2) those are the pronouns of a specific person.

In addition, the ODC letters also stated that the unauthorized "administrative dispositions" could be used as evidence of aggravation, and cited to ABA Standards for Imposing Lawyer Sanctions ("ABA Standards") Standard 9.22(c), which allows "a pattern of misconduct" to be considered as aggravating evidence in formal disciplinary proceedings. See RDB Rule 23(a)(iv). "Aggravating factors or circumstances may justify an increase in the degree of discipline to be imposed." Office of Disciplinary Counsel v. Au, 107 Hawai'i 327, 344, 113 P.3d 203, 220 (2005) (internal bracketing and quotations removed) (quoting ABA Standards, Standard 9.21, at 15 (1991)). "Misconduct" is further defined by RSCH Rule 2.2 (2008) as "[a]cts or omissions by an attorney which violate the Hawai'i Rules of Professional Conduct[.]"

The ODC indicated the sanctions orders were "likely misconduct" based on HRPC Rule 3.4(e) (2014), which provides in part that "[a] lawyer shall not: . . . (e) knowingly disobey an obligation under the rules of a tribunal . . . ." (Emphasis added.) The RDB require the ODC, however, to investigate "all matters involving alleged violations of the Hawai'i Rules of Professional Conduct in accordance with RSCH [Rules] 2.6(b)(2)

22

and 2.6(b)(3)."[16]  RDB Rule 12 (2013).  There is no indication that the ODC conducted an investigation to determine whether Counsel had "knowingly" violated an obligation under a court rule.  Further, formal disciplinary proceedings require that attorney misconduct be established by "clear and convincing evidence," a standard not required for sanction orders.  RSCH Rule 2.7(c) (2019).

Court sanctions orders can be issued for reasons that would not constitute a "knowing" violation of an obligation under a court rule based on "clear and convincing evidence."  Monetary sanctions are sometimes imposed on counsel for late appearances or filings or for exceeding page limits set by court rules,

---

[16]    RSCH Rule 2.6(b)(2) & (3) provide as follows:

> **2.6.  Disciplinary counsel.**
> . . . .
> **(b)    Powers and duties of Chief Counsel.** Chief Counsel shall have the power and duty:
> . . . .
>> (2) To dispose, subject to review by members of the Board assigned by the Chairperson, of all matters involving alleged misconduct by dismissal, private informal admonition, referral to a minor misconduct or assistance program, or the institution of formal disciplinary proceedings before a hearing committee or officer. Except in matters requiring dismissal because the complaint is frivolous on its face or falls outside the Board's jurisdiction, no disposition shall be recommended or undertaken by Counsel until the accused attorney shall have been afforded the opportunity to state [their] position with respect to the allegations against [them].
>> (3)  To file with the supreme court certificates of conviction of attorneys for crimes.

without the issuing judge having intended for the sanctions orders to be considered "misconduct" that could be considered as "aggravating" factors in later disciplinary proceedings. Thus, court sanction orders must not be treated by the ODC as referrals for investigation of misconduct without an express referral to the ODC by the court. If there is such a referral, ODC must follow the procedure set out by applicable rules, including providing an attorney with the due process protections provided by the rules. Therefore, even after a specific referral by a judge, the ODC may not consider orders for sanctions as evidence of aggravation under ABA Standard 9.22(c) unless a determination has been made through the procedures set forth in the RSCH and RDB that the sanctioned conduct is a "clear and convincing" and "knowing" violation constituting "misconduct" under the HRPC.

For these reasons, the ODC was without authority to treat the ICA sanction orders as administrative dispositions that might be used in the future as evidence of a pattern of conduct in aggravation.

## V. Conclusion

For the foregoing reasons, we affirm the ICA's sanctions orders against Counsel, but also order that the clerk of the

court transmit this opinion to the ODC for appropriate action

consistent with this opinion.

Earle A. Partington and                    /s/ Mark E. Recktenwald
R. Patrick McPherson,
Real Parties In Interest                   /s/ Paula A. Nakayama

                                           /s/ Sabrina S. McKenna

                                           /s/ Richard W. Pollack