# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 46832

CHARLIE M. SMITH,

    Petitioner-Respondent,

v.

BALLARD SMITH,

    Respondent-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

Boise, August 2020 Term

Opinion Filed: October 5, 2020

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Gerald Schroeder, Senior District Judge.

The district court's order is <u>affirmed.</u>

Derek A. Pica, PLLC, Boise, for appellant. Derek A. Pica argued.

Cosho Humphrey, LLP, Boise, for respondent. Stanley Welsh argued.

_____

BRODY, Justice.

This appeal involves a challenge to subject matter jurisdiction in connection with a petition to modify an order in a divorce proceeding. In 2005, Ballard Smith (Husband) and Charlie Smith (Wife) stipulated to a final divorce order (2005 Order) that required the parties to sell real property located in Salt Lake City, Utah (Salt Lake Property) and allocate the net proceeds to both parties on an equal basis. In subsequent orders, Husband was tasked with marketing and selling the Salt Lake Property. Without Wife's knowledge, Husband moved the Salt Lake Property in and out of various business entities and unilaterally sold a six-acre portion of the Salt Lake Property. After the majority of the Salt Lake Property remained unsold for nearly a decade, Wife petitioned the magistrate court to modify its prior order, requesting that the magistrate court: (1) direct that the Salt Lake Property be appraised and that Husband pay her one-half the appraised value, or (2) in the alternative, appoint a receiver to sell the Salt Lake

1

Property and divide the net proceeds equally. Husband opposed the petition, in large part, by arguing that the magistrate court never had subject matter jurisdiction over the Salt Lake Property when it entered its original final divorce order. The magistrate court granted Wife's petition to modify and appointed a receiver to handle all matters relating to the Salt Lake Property. Additionally, the magistrate court ordered Husband to pay Wife one-half of the net proceeds from the sale of the six-acre portion of the Salt Lake Property and awarded Wife attorney fees pursuant to Idaho Code section 12-121. Husband appealed to the district court. The district court affirmed the magistrate court and awarded Wife attorney fees for her intermediate appeal. Husband timely appealed to this Court. We affirm the district court's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Husband and Wife were married in 1988. In 2003, after fifteen years of marriage, the parties divorced. Now, seventeen years after their divorce, the parties continue to dispute the sale and disposition of the Salt Lake Property. The Salt Lake Property comprises 54 acres of industrial land upon which two radio towers are located. Prior to the parties' marriage, Husband owned stock in a California corporation, Sun Mountain Broadcasting, Inc. (SMB). SMB acquired title to the Salt Lake Property in 1985.

Acting as the sole member of SMB's board of directors, Husband dissolved SMB on January 2, 1996. The certification of dissolution filed with the California Secretary of State provided that the affairs of SMB had been completely wound up. The certificate of dissolution further provided that "[SMB's] known debts and liabilities have actually been paid," and "[SMB's] known assets have been distributed to the persons entitled thereto."

The parties stipulated to a final order dividing their assets and liabilities in 2005. According to the 2005 Order's property and debt schedule, the Salt Lake Property was to be "sold as soon as reasonably possible" and the net proceeds of the sale were to be split equally between the parties. The property and debt schedule also identified the Salt Lake Property as community property, and described the property as owned by B&C Realty, LLC (B&C). B&C is an Idaho limited liability company that was organized by the parties to hold real property, including the Salt Lake Property, on December 27, 1995. Husband and Wife were the sole members of B&C. The 2005 Order was not appealed.

Although B&C was administratively dissolved on March 11, 2005, it was reinstated on November 17, 2006. Upon reinstatement, B&C's annual report removed Wife's name as a

2

member and added Husband's new wife, Loree R. Smith, as a member.

Subsequent to the 2005 Order, it was discovered that SMB still held recorded title to the Salt Lake Property. The magistrate court held a hearing on the matter in 2007 to address the SMB stock as an omitted asset that had not been divided in the 2005 Order. The magistrate court entered an order (2007 Order) addressing the omission of the SMB stock. The 2007 Order, in accordance with Husband and Wife's stipulation and agreement, required Husband—the only SMB shareholder—to deed the Salt Lake Property from SMB to B&C so that the property could be sold and the proceeds could be equally divided between the parties:

> 2. SUN MOUNTAIN BROADCASTING, INC.: The parties stipulate and agree that [SMB] is an omitted asset which was not divided pursuant to this [c]ourt's June 28, 2005 Final Order. With respect to this omitted asset, the parties agree that it should be equally divided. Further, the parties stipulate and agree as follows:
>
>> a. [Husband] shall cause the [Salt Lake Property], currently deeded in the name of [SMB], to be transferred to [B&C].
>>
>> b. [B&C] shall set up an account in which all rents due and owing on the Sale Lake [P]roperty shall be deposited.
>>
>> c. [B&C] is to be dissolved, all of its assets sold and the proceeds from any such sale shall be split equally between [Wife] and [Husband].
>>
>> d. [B&C] shall use the rents deposited into the [B&C] account to pay all property taxes due and owing on the Salt Lake [P]roperty. If the rents deposited into the [B&C] account are not sufficient to pay the property taxes, each party shall be responsible and pay for one-half of said deficiency.
>>
>> e. [Wife] shall be responsible for "spearheading" the sale of the Salt Lake [P]roperty and the dissolution of [B&C]. [Wife] shall obtain an appraisal for the purpose of selling the Salt Lake [P]roperty and negotiate the lease with Clear Channel.

The 2007 Order was not appealed.

About nine months after the 2007 Order was entered, Husband executed a warranty deed transferring 48 acres of the Salt Lake Property from SMB to B&C. Approximately six acres of the Salt Lake Property remained with SMB. Husband testified that the six acres were environmentally contaminated. Because buyers were concerned about liability associated with the contamination, he deeded the non-contaminated portion of the Salt Lake Property to B&C to make the property more marketable.

In 2008, a motion for contempt brought the parties back before the magistrate court

3

regarding the Salt Lake Property. The magistrate court entered a new order (2008 Order) modifying the 2007 Order, placing Husband in charge of marketing, selling, and leasing the Salt Lake Property. The relevant portion of the 2008 Order provided:

> 3. That the [2007 Order] filed on May 14, 2007 shall be modified as follows:
> a. [Husband] shall be the sole person in charge of handling all matters pertaining to the marketing, sale[,] and leasing of the real property located in Salt Lake which was formerly in the name of [SMB] hereinafter [Salt Lake Property].

The 2008 Order also required Husband to provide Wife with information about new real estate listing agreements and any substantive expenses relating to the sale of the Salt Lake Property. The 2008 Order was not appealed.

Husband subsequently violated both the 2007 Order and the 2008 Order. On May 19, 2011, in violation of the 2007 Order, Husband executed a warranty deed conveying all 54 acres of the Salt Lake Property to S&R Realty, LLC (S&R Idaho), an Idaho limited liability company. Husband later dissolved S&R Idaho and formed S&R Realty, LLC (S&R Utah), a Utah limited liability company. On August 30, 2012, Husband transferred all 54 acres of the Salt Lake Property from S&R Idaho to S&R Utah. Husband never discussed transferring the Salt Lake Property from B&C to S&R Idaho or S&R Utah with Wife.

On March 14, 2013, without notifying Wife, Husband recorded five instruments in Salt Lake County that impacted the ownership of the Salt Lake Property. The magistrate court's findings of fact summarized the five instruments as follows:

> a. A deed regarding all or a portion of what had been omitted in the first deed transferring the [Salt Lake] Property to B&C in 2007. This deed transferred six acres to BZW Investments, L.P., a Utah Limited Partnership [(BZW)].
>
> > i. [Husband] made this transfer, retained 100% of the net proceeds, and this transaction does not reflect the existence of any other [SMB] shareholders. A broker, Charlie Davis (hereinafter, "Mr. Davis") was paid $8,000.00 as a sales commission.
> >
> > ii. No other individuals were notified of [Husband's] intent to sell the six acres. None of the sale proceeds were provided to any third parties.
>
> b. Two deeds that accomplished a lot line adjustment. The first Special Warranty Deed, executed by BZW in favor of BZW, joined the [six] acres [Husband] had transferred to BZW with an adjoining lot already owned by BZW. The other deed, signed by [Husband], was a Special Warranty Deed executed by S&R [Utah] in favor of S&R [Utah].
>
> c. Another deed of trust in favor of S&R [Utah], encumbered the BZW property

4

and secured a $149,250.00 note.

    d. The fifth deed of trust was executed in favor of Mr. Davis and encumbered the remaining 48 acres held in S&R [Utah].

Essentially, Husband unilaterally sold six acres of the Salt Lake Property, the same six acres he previously stated were contaminated, to BZW for $224,250. Husband used $106,923.23 of the BZW sale proceeds to pay delinquent property taxes on the Salt Lake Property for the years 2008 through 2012. Wife did not receive any part of the BZW sale proceeds.

The Salt Lake Property was leased to Clear Channel, generating a monthly income since at least 2006. Despite the provision in the 2007 Order requiring the Salt Lake Property's rental income be deposited into B&C's designated account, no rental income has ever been deposited in that account. Husband reported the Salt Lake Property's rental income on his personal income tax returns and used a portion of the rental income to pay his personal legal expenses.

On July 1, 2013, without notifying Wife, Husband executed a new listing agreement with Mr. Davis for the Salt Lake Property's remaining 48 acres. The new agreement listed the Salt Lake Property at $1,920,000. After the listing received no offers, the price was reduced to $1 million. On December 15, 2015, Husband entered into a real estate contract with Gafco, LLC, to sell the Salt Lake Property for $825,000. Husband failed to provide Wife with any information regarding the real estate contract with Gafco prior to its execution.

After discovering Husband's unilateral actions regarding the Salt Lake Property, Wife filed a petition to modify the magistrate court's previous orders, asking the magistrate court to: (1) eliminate the terms contained in paragraph 3 of the 2008 Order; (2) direct that the Salt Lake Property be appraised and awarded to Husband at the appraised value; and (3) direct Husband to pay Wife one-half of the appraised value. Responding to Wife's petition, Husband asserted for the first time that the magistrate court never had subject matter jurisdiction over the Salt Lake Property in their divorce proceeding. He also asked the magistrate court to order Wife to pay her share of the Salt Lake Property's property taxes from 2007 through 2014 and to order Wife to stop interfering with his efforts to sell the Salt Lake Property.

A trial on Wife's petition to modify began on June 1, 2015. After some initial testimony, however, the parties agreed to continue the trial to conduct further discovery. Notably, Husband asserted for the first time that the Salt Lake Property was not distributed to him individually, and that he was currently holding the property in one of his limited liability companies for the benefit of SMB's other shareholders. Husband had never mentioned the existence of other SMB

5

shareholders prior to this time.

Wife filed a Second Amended Petition to Modify Order Pursuant to Rule 809 (Second Amended Petition) on January 25, 2017, which is the operative petition with respect to this appeal. Wife's Second Amended Petition asked the magistrate court, as an alternative to awarding her one-half of the appraised value of the Salt Lake Property, to appoint a receiver to sell the Salt Lake Property and equally divide the net proceeds. Additionally, Wife asked for a money judgment for one-half of the fair market value of the six acres that Husband had sold to BZW without her knowledge. Trial resumed on April 24, 2017, and concluded after three days of testimony.

On January 29, 2018, the magistrate court issued its Findings of Fact and Conclusions of Law, granting Wife's Second Amended Petition. The magistrate court held that: (1) it had jurisdiction over SMB's stock the moment Husband stipulated that it was a community asset; (2) the Salt Lake Property is community property; (3) it had the power to appoint a receiver to sell the Salt Lake Property; (4) Wife was entitled to one-half of the net proceeds from the sale of the six acres that Husband sold to BZW without her knowledge; and (5) Wife was entitled to attorney fees pursuant to Idaho Code section 12-121. Further, the magistrate court granted Wife's request to appoint a receiver and ordered the receiver to handle the management and sale of the Salt Lake Property, provide an accounting to the magistrate court with respect to the Salt Lake Property's rental income, and determine what amounts were paid for penalties and interest on taxes for the Salt Lake Property. The magistrate court entered judgment on March 23, 2018. Husband appealed to the district court.

Subsequent to its initial judgment, the magistrate court granted Wife's motion for attorney fees and costs and entered its judgment on July 16, 2018.

On January 24, 2019, the district court issued its Opinion on Appeal, in which it affirmed the magistrate court's decision to grant Wife's petition to modify and award attorney fees. The district court also awarded Wife attorney fees and costs on the intermediate appeal. Husband subsequently appealed to this Court.

## II. STANDARD OF REVIEW

When this Court reviews the decision of a district court sitting in its appellate capacity, the standard of review is as follows:

> The Supreme Court reviews the [magistrate court's] record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.
>
> Thus, this Court does not review the decision of the magistrate court. "Rather, we are 'procedurally bound to affirm or reverse the decisions of the district court.' "

*Papin v. Papin*, 166 Idaho 9, 18, 454 P.3d 1092, 1101 (2019) (internal citations omitted) (quoting *Pelayo v. Pelayo*, 154 Idaho 855, 858–59, 303 P.3d 214, 217–18 (2013)). "Accordingly, we will review the district court's decision to determine whether it correctly addressed the issues raised on appeal." *Id.*

### III.    ANALYSIS

This case largely hinges on whether the magistrate court initially had subject matter jurisdiction over the Salt Lake Property. Husband argues that the magistrate court never had subject matter jurisdiction over the Salt Lake Property. We disagree.

### A. The district court did not err in affirming the magistrate court's decision that it had subject matter jurisdiction over the Salt Lake Property.

The district court affirmed the magistrate court's holding that it had subject matter jurisdiction over the Salt Lake Property. The district court held that substantial evidence supported the magistrate court's conclusion that, at the time of the parties' divorce in 2003, SMB—the entity that originally held title to the Salt Lake Property—had already been dissolved and the assets had been distributed to Husband as SMB's sole shareholder. Husband asserts that because the Salt Lake Property was held by SMB—a California corporation—at the time of the parties' divorce, and neither party ever held title to the Salt Lake Property individually, the magistrate court never had subject matter jurisdiction over the asset. Husband also argues that the magistrate court was required to give full faith and credit to a Utah statute, which, Husband argues, requires that the parties' interest in the Salt Lake Property be adjudicated in Utah. We take up each argument in turn.

1. <u>The magistrate court had subject matter jurisdiction over the Salt Lake Property.</u>

Subject matter jurisdiction is "the right and abstract power of the tribunal to exercise power over cases of the kind and character of the pending one." *Baird-Sallaz v. Sallaz*, 157 Idaho 342, 346, 336 P.3d 275, 279 (2014) (quoting *Young Elec. Sign Co. v. State*, 135 Idaho 804, 809, 25 P.3d 117, 122 (2001)). Idaho Code section 32-715 grants district courts original jurisdiction

over all domestic relations and dissolution of marriage matters. This jurisdiction includes the division and disposition of community property. *See* I.C. § 32-713. The district court's original jurisdiction over marriage dissolution is extended to the magistrate division. *Baird-Sallaz*, 157 Idaho at 346, 336 P.3d at 279.

"Lack of subject matter jurisdiction may be raised at any time." *Id.* (quoting *Fisher v. Crest Corp.*, 112 Idaho 741, 744, 735 P.2d 1052, 1055 (Ct. App. 1987)). However, this Court has narrowly construed the ability of a party to void a judgment by collaterally attacking a defect in a court's subject matter jurisdiction. *Id.* If a court has the general power to adjudicate the issues in the class of suits to which the case belongs, its interim orders and final judgments are not subject to collateral attack over subject matter jurisdiction. *Id.* (citing *Dep't of Health & Welfare v. Housel*, 140 Idaho 96, 101, 90 P.3d 321, 326 (2004)). A party cannot collaterally attack a court's final judgment over which a court has subject matter jurisdiction merely because the party believes the judgment is wrong. *Id.*

A magistrate court, when allocating community property as part of a divorce proceeding, cannot directly affect title to real property located in another state. *See Fall v. Eastin*, 215 U.S. 1, 11–12 (1909) ("[W]here the suit is strictly local, the subject-matter is specific property, and the relief, when granted, is such that it *must* act directly upon the subject-matter, and not upon the person of the defendant, the jurisdiction must be exercised in the state where the subject-matter is situated.") (emphasis in original). Nevertheless, a magistrate court does have the authority to indirectly affect out-of-state real property based on its personal jurisdiction over a party. *Sheppard v. Sheppard*, 104 Idaho 1, 21, 655 P.2d 895, 915 (1982), *overruled on other grounds by Coeur d'Alene Tribe v. Johnson*, 162 Idaho 754, 405 P.3d 13 (2017). "[W]hile a state court cannot directly affect title to property in another state[,] . . . divorce courts have the power to determine whether property in another state or even a foreign country is community or separate and to determine the parties' interest in that property." *Id.* Moreover, a personal judgment ordering the conveyance of such property is a valid exercise of a magistrate court's power. *Andre v. Morrow*, 106 Idaho 455, 461, 680 P.2d 1355, 1361 (1984). Such determinations are entitled to full faith and credit by other states. *Sheppard*, 104 Idaho at 21, 655 P.2d at 915. Additionally, a magistrate court has the authority to enforce such orders. *See Vierstra v. Vierstra*, 153 Idaho 873, 880, 292 P.3d 264, 271 (2012) (stating that "[e]very court has the authority to enforce its orders as issued."). "Idaho law provides that every court has the power to 'compel obedience to its

8

judgments, orders and process. . . .' " *Id.* (quoting I.C. § 1-1603(1)).

As a preliminary matter, we note that the district court erred when it held that Husband was judicially estopped from changing his position to argue that the magistrate court lacked subject matter jurisdiction. *See Fix v. Fix*, 125 Idaho 372, 376, 870 P.2d 1331, 1335 (Ct. App. 1993) (stating that a lack of jurisdiction in a divorce action may not be cured by means of a stipulation by the parties). This error is immaterial, however, because the district court upheld the magistrate court's subject matter jurisdiction on other grounds.

Notwithstanding the issue of judicial estoppel, the district court did not err in affirming the magistrate court's conclusion that it had subject matter jurisdiction over the Salt Lake Property. The magistrate court had subject matter jurisdiction to enter a divorce decree and to approve the parties' stipulated property and debt schedule. *See* I.C. § 32-713; *Borley v. Smith*, 149 Idaho 171, 178, 233 P.3d 102, 109 (2010). In the parties' property and debt schedule in the 2005 Order, the parties listed the Salt Lake Property as community property owned by B&C. At the time of the parties' divorce, Husband and Wife were the only members of B&C. Although Husband testified that Wife was never a member of B&C because Wife "refused to sign the operating agreement," Husband was impeached on this assertion and substantial evidence supports the magistrate court's conclusion that Husband and Wife were the sole members of B&C. Husband testified that B&C was formed to hold SMB's real property—the Salt Lake Property—upon the latter's dissolution in 1996. Further, substantial evidence supports the magistrate court's conclusion that SMB's assets were distributed to Husband upon dissolution in 1996. Thus, there is substantial evidence in the record supporting the conclusion that the Salt Lake Property was a community property asset at the time of the parties' divorce in 2003. As such, the magistrate court had subject matter jurisdiction over the Salt Lake Property.

The fact that the Salt Lake Property is located in Utah does not alter this Court's analysis. A court has the power to indirectly affect out-of-state property by means of a decree based on its personal jurisdiction over the parties. *Sheppard*, 104 Idaho at 21, 655 P.2d at 915; *Andre*, 106 Idaho at 461 n.2, 680 P.2d 1361 n.2. The magistrate court had personal jurisdiction over the parties' divorce and property division. *See* I.C. § 32-713. Thus, the magistrate court had the power to order Husband to dispose of the out-of-state Salt Lake Property. *See Andre*, 106 Idaho at 461, 680 P.2d at 1361. Further, the magistrate court had the authority to subsequently enforce its order. *Vierstra*, 153 Idaho at 880, 292 P.3d at 271. Therefore, the district court did not err

9

when it affirmed the magistrate court's decision that it had subject matter jurisdiction over the Salt Lake Property.

   2.  The magistrate court's distinction between the Salt Lake Property and SMB's stock is not binding on this Court.

Husband argues that in a 2007 hearing, the magistrate court opined that it might not have jurisdiction over the Salt Lake Property. Husband further argues that the magistrate court distinguished between dividing SMB's stock, which the magistrate court found it had jurisdiction to divide, and the Salt Lake Property, which was held by SMB. Husband is correct that the magistrate court noted that it might not have jurisdiction over the Salt Lake Property, but that it did have jurisdiction over SMB's stock. At the 2007 hearing, the parties and the magistrate court discussed selling the Salt Lake Property:

> THE COURT: Frankly, it is not something I think this court has jurisdiction over. This court has jurisdiction over, presently, the stock of . . . [SMB], that's what we have jurisdiction over, and not over the real property or over the acts of [B&C].
>
> . . .
>
> HUSBAND'S ATTORNEY: And then we're dividing – we are dividing that asset, basically, by – I mean, dividing the stock or dissolving the corporation – well, [Husband] is agreeing to – deed it over. But you know, any costs or obligations or anything that arises out of that – I mean, it's a 50/50 deal going both ways. Okay.
>
> THE COURT: That's my understanding of what the parties agreed.
>
> . . .
>
> Just so the record is clear about technically, legally what is going on here is they're – part of the final order, back in June of 2005, had to do with the division of the property that we have been referring to, generally, as the Salt Lake [P]roperty.
>
> In fact, the court may not have had jurisdiction to divide that property because that property was owned by [SMB], which was a separate corporation. It was not owned individually by either party or as community property.
>
> But [SMB] had shares of stock, of course, that the court would have had jurisdiction to divide and that stock was not – arguably, it wasn't divided by that final order.
>
> So what we are doing now is recognizing that, rather than dividing the property, what this court has the power to do is address the stock in [SMB].
>
> The parties, by their stipulation, have agreed that I can enter an order that [Husband] will assign all of that stock to [B&C]; and then [B&C] will be wound up to the extent possible and the assets sold.

10

Notwithstanding this colloquy at the 2007 hearing, the magistrate court's statements do not bind this Court's decision today. Although jurisdiction is a question of law that may be raised at any time, appellate courts exercise free review over the question. *Doe v. Doe*, 158 Idaho 614, 616, 349 P.3d 1205, 1207 (2015). Further, during the hearing that Husband cites, the magistrate court made clear that the parties were agreeing to sell the Salt Lake Property and split the proceeds evenly. The magistrate court further confirmed that the parties would split the property taxes equally if the Salt Lake Property was not sold before the taxes were due. The parties also discussed splitting the cost of appraising and selling the Salt Lake Property. Even after the magistrate court raised reservations about whether it had jurisdiction over the real property rather than SMB's stock, the parties proceeded to discuss the sale of the property. The magistrate court's ambiguous statements relative to jurisdiction over the Salt Lake Property do not bind this Court, especially where its actions clearly complied with the law.

Husband asserts that the magistrate court and district court erred in referring to Husband's stock in SMB and the Salt Lake Property interchangeably, treating them as the same asset. Husband argues that the magistrate court only had personal jurisdiction over Husband as an individual, not as a stockholder in SMB or as a member of B&C. Husband cites *Jayo Development, Inc. v. Ada County Board of Equalization*, 158 Idaho 148, 345 P.3d 207 (2015), for the proposition that a corporation is a separate entity from its shareholders, just as a limited liability company is a separate entity from its members. Thus, Husband argues that even though the magistrate court had personal jurisdiction over him, it did not have jurisdiction over any stock or property held by SMB or B&C at the time of his divorce.

Husband's legal assertion that corporations and limited liability companies are separate from their shareholders and members, respectively, is correct; however, that proposition alone does not mean that the magistrate court lacked jurisdiction in this case. Magistrate courts have authority to divide and dispose of parties' community property assets. Business entities, including limited liability companies, acquired during the marriage are community property. *Papin v. Papin*, 166 Idaho 9, 27–28, 454 P.3d 1092, 1110–11 (2019). Here, substantial evidence supports the conclusion that SMB no longer existed at the time of the divorce, and that SMB's assets, including the Salt Lake Property, had been distributed to Husband during the marriage notwithstanding the fact that recorded title was still held by SMB. Thus, the Salt Lake Property is subject to the magistrate court's jurisdiction to divide and disperse.

3. The district court did not err in affirming the magistrate court's conclusion that the Salt Lake Property became Husband's property upon SMB's dissolution in 1996.

Husband argues that the magistrate court and district court erred in concluding that Husband had an ownership interest in the Salt Lake Property because of SMB's dissolution in 1996. Husband argues that, despite SMB's dissolution, the deed to the Salt Lake Property remained in SMB's name through the parties' divorce. Therefore, according to Husband, SMB's dissolution alone did not give him an individual ownership interest in the Salt Lake Property that the magistrate court had jurisdiction to divide. We disagree.

The district court did not err in affirming the magistrate court's conclusion that Husband had an individual ownership interest in the Salt Lake Property at the time of the parties' divorce in 2003. Substantial evidence in the record supports the conclusion that SMB had been completely dissolved by the time the parties divorced in 2003, and that Husband had been treating the Salt Lake Property as a personal asset. SMB dissolved in 1996, approximately seven years before the parties' divorce. The certificate of dissolution filed with the California Secretary of State expressly stated that the affairs of SMB had been completely wound up. The certificate further provided that "[SMB's] known assets have been distributed to the persons entitled thereto."

Husband argues that, although SMB dissolved in 1996, SMB's corporate existence continued after dissolution. Under California law, where SMB was incorporated, a dissolved corporation continues to exist for certain purposes, including disposing of and conveying its property. Cal. Corp. Code § 2010(a). California law provides:

> A corporation which is dissolved nevertheless *continues to exist for the purpose of winding up its affairs*, prosecuting and defending actions by or against it and enabling it to collect and discharge obligations, *dispose of and convey its property and collect and divide its assets*, but not for the purpose of continuing business except so far as necessary for the winding up thereof.

*Id.* (emphasis added).

The certificate of dissolution, however, contradicts Husband's argument that SMB continued to exist and hold the Salt Lake Property after dissolution. While a California corporation may continue to exist for limited purposes after dissolution, such as winding up and conveying its property, the certificate here provided that the affairs of SMB had "been completely wound up," and its "known assets [had] been distributed to persons entitled to [the assets]." Given the representations contained in the certificate of dissolution, there would be no

12

purpose for SMB to continue to exist to wind up its affairs after its dissolution in 1996.

Husband's actions and statements provide substantial evidence that Husband took possession of the Salt Lake Property after SMB dissolved. To begin with, Husband reported the Salt Lake Property's rental income on his personal tax returns from 2008 through 2011. The rental income came from a lease with Clear Channel. Husband also testified that he deposited rental income into his limited liability company, S&R Utah, and that he has used a portion of the rental income to fund this litigation.

Moreover, in negotiating a new lease for the Salt Lake Property's radio towers, Husband represented that he was the owner of the Salt Lake Property. In a 2006 email to Clear Channel, for example, Husband represented that he owned the Salt Lake Property with Wife. Husband wrote that "[the Salt Lake Property] is in an LLC named [B&C] owned by my ex-wife and myself." In his emails with Clear Channel, Husband never indicated that there were any other owners of the Salt Lake Property.

Likewise, none of the deeds that Husband executed in 2013 reference any ownership interest outside of Husband or his limited liability companies. When Husband sold six acres of the Salt Lake Property to BZW, he did not split the proceeds with anyone else, nor did he involve anyone else in the transaction. There is no evidence that suggests that Husband, in executing these deeds, was acting on behalf of anyone or any entity other than himself and his own limited liability company.

Further, Husband's testimony contradicts the assertion that the Salt Lake Property was held by anyone other than himself or his limited liability companies. Husband testified that upon SMB's dissolution, B&C was formed to hold "the real property that had been owned by [SMB]"—namely the Salt Lake Property. Husband further testified that from 1995 to 2005, he never sent anyone else a bill for a share of the taxes or other expenses associated with the Salt Lake Property.

During the course of litigation, Husband raised the argument that he was holding the Salt Lake Property in his limited liability company for the benefit of SMB's other shareholders. Curiously, Husband claimed that he transferred the Salt Lake Property from B&C to S&R Idaho, and then from S&R Idaho to S&R Utah—all in violation of the 2007 and 2008 Orders—so that S&R Utah could own "the property for the benefit of the people that had an interest in the property." However, none of Husband's actions or representations support that argument.

13

Importantly, none of the various limited liability companies that he deeded the Salt Lake Property to ever listed any members other than himself, Wife, or his new wife, Loree. Husband treated the Salt Lake Property as his own asset, and any argument that he held the property for the benefit of others is frivolous. The evidence overwhelmingly supports the conclusion that upon dissolution of SMB, Husband took possession of the Salt Lake Property. Thus, we hold that the district court did not err in affirming the magistrate court's conclusion that the Salt Lake Property became Husband's property upon SMB's dissolution in 1996.

4. Husband's full faith and credit argument fails.

Husband contends that the Full Faith and Credit Clause of the Constitution of the United States precludes the magistrate court's jurisdiction over the Salt Lake Property. *See* U.S. Const. art. IV, § 1. Husband argues that Idaho courts are required to give full faith and credit to statutes in other states and that, pursuant to a Utah statute, only Utah courts have jurisdiction to determine ownership interest in Utah property. *See* Utah Code § 78B-3-301(1)(b) (stating that an action to determine an interest in real property shall be litigated in the county where the real property is located). Because the Salt Lake Property is located in Utah, Husband argues that Idaho courts lack jurisdiction to determine the ownership interest. Essentially, Husband's full faith and credit argument is an extension of his argument that the magistrate court never had subject matter jurisdiction over the Salt Lake Property. This argument fails, however, for the reasons explained above. A magistrate court does have authority to indirectly affect out-of-state real property based on its personal jurisdiction over a party. *Sheppard*, 104 Idaho at 21, 655 P.2d at 915. Further, a personal judgment ordering the conveyance of out-of-state property is a valid exercise of a magistrate court's power. *See Andre*, 106 Idaho at 461, 680 P.2d at 1361. Thus, we will not entertain Husband's lack-of-jurisdiction assertions again here.

5. Wife had standing to bring her Second Amended Petition.

Husband contends that Wife never had standing to raise the claims in her Second Amended Petition. Husband argues that title to the Salt Lake Property has always been held by a third party—SMB, B&C, S&R Idaho, or S&R Utah—and Wife never held a personal interest in the Salt Lake Property. Thus, Husband argues that Wife's Second Amended Petition sought to assert the rights of a third party, and Wife does not meet the requirements of third-party standing. The district court concluded, however, that the fact that the entities listed above are not parties to the action is not a question of jurisdiction, but rather failure to join an indispensable party. The

14

district court reasoned:

> To the extent that [] [Husband] asserts [B&C] and [S&R Utah] are not parties to this action and that their absence deprived the [c]ourt of jurisdiction, failure to join an indispensable party is an affirmative defense that is required to be raised either by motion or a responsive pleading, which the appellant failed to do.

We note that, although Husband raises his standing argument for the first time on appeal, "the issue of standing is jurisdictional, [so] it can be raised at any time, including for the first time on appeal." *Campbell v. Parkway Surgery Ctr., LLC*, 158 Idaho 957, 961–62, 354 P.3d 1172, 1176–77 (2015). With that said, Husband's standing argument nevertheless fails. Substantial evidence supports the conclusion that Wife had an interest in the Salt Lake Property. The 2005 Order and the property and debt schedule listed the Salt Lake Property as a community property asset held by B&C. The "B" in B&C stands for Ballard, and the "C" in B&C stands for Charlie. Husband has admitted that B&C is a community property asset. Further, when it was discovered that the deed to the Salt Lake Property was still held by SMB, the parties stipulated that the Salt Lake Property was an omitted asset and agreed to deed the property to B&C, and Husband proceeded, in fact, to deed the property to B&C in 2008. As one of two members of B&C, Wife held an interest in the Salt Lake Property.

We agree with the district court's conclusion that Husband's third-party standing issue is really one of a failure to join an indispensable party. This Court recently addressed a similar issue in *In re Estate of Smith*, 164 Idaho 457, 432 P.3d 6 (2018), where a party raised a jurisdictional challenge to the magistrate court's personal jurisdiction over a third party. *Id.* at 469, 432 P.3d at 18. In rejecting the jurisdiction argument, the Court reasoned that "the party's argument is not really about a lack of personal jurisdiction. Rather, his claim of error stems from the fact that [the third party] was not joined as an indispensable party even though it was a party to [the] 2008 transfer of [the] property." *Id.* Because failure to join an indispensable party is an affirmative defense that must be raised in a responsive pleading or by motion, and the challenging party failed to raise such a defense in a pleading, this Court rejected the jurisdiction challenge. *Id.*

Here, Husband's challenge is similar to the one raised in *Smith*, arguing that because SMB, B&C, S&R Idaho, and S&R Utah are the only parties that held title to the Salt Lake Property, and are not parties to the case, the magistrate court never had jurisdiction to grant Wife's Second Amended Petition. Like the jurisdictional claim in *Smith*, Husband's

jurisdictional claim is more appropriately framed as a failure to join an indispensable party. Because Husband failed to raise this affirmative defense or adjudicate this issue in an ancillary proceeding, his claim fails. Accordingly, the district court did not err in affirming the magistrate court's jurisdiction.

**B. The district court did not err in affirming the magistrate court's ruling that the Salt Lake Property was community property.**

Husband contends that the district court erred in affirming the magistrate court's ruling that the Salt Lake Property was community property. Rather, Husband argues the Salt Lake Property was his separate property. Husband admits that he stipulated that the Salt Lake Property was an omitted asset in 2007, but he argues that he never stipulated that the Salt Lake Property was an omitted community asset. Husband's argument here is similar to his jurisdictional arguments, in that he asserts that the "parties never acquired real property in Salt Lake City, Utah, during their marriage," because the Salt Lake Property was held by SMB. Thus, Husband argues that the magistrate court lacked jurisdiction to divide the separate property in a divorce proceeding.

In response, Wife first notes that Husband stipulated to three separate orders—the 2005 Order, the 2007 Order, and the 2008 Order—categorizing the Salt Lake Property as community property, and he did not appeal them. Thus, Husband is bound by these stipulations and cannot now argue that the Salt Lake Property was separate property. Next, Wife argues that these orders became final after 42 days, making Husband's arguments barred by res judicata. Further, Wife argues that even though the deed of record showed that the Salt Lake Property was held by SMB at the time of the parties' divorce, substantial evidence supported the magistrate court's finding that the Salt Lake Property became Husband's property upon SMB's dissolution. Additionally, Wife argues that the doctrine of equitable estoppel bars Husband from changing his position on the nature of the Salt Lake Property.

It is presumed that all property acquired after marriage is community property. *See, e.g.*, *Banner Life Ins. Co. v. Mark Wallace Dixson Irrevocable Tr.*, 147 Idaho 117, 124, 206 P.3d 481, 488 (2009); *see also* I.C. 32-906(1) (stating that it is presumed that all property acquired after marriage by either spouse is community property). A party seeking to overcome this presumption has the burden of proving that an asset is that party's separate property. *Id.* Absent such proof, all property acquired after marriage by either spouse is community property. *Id.*

16

Magistrate courts presiding over divorce proceedings are required to divide the parties' community property. I.C. § 32-712(1). In rendering divorce decrees, magistrate courts may order a partition or sale of the community property and a division of the proceeds. I.C. § 32-713. In the absence of an appeal from an original divorce decree, the property divisions of that decree are final and no jurisdiction exists to modify property provisions of the divorce decree. *Borley*, 149 Idaho at 178, 233 P.3d at 109. However, magistrate courts have power to interpret and enforce property divisions to comply with the original divorce decree. *Id.*

It is true that SMB acquired the Salt Lake Property prior to the parties' marriage. However, SMB's dissolution, subsequent court orders, and Husband's stipulations provide substantial evidence that the Salt Lake Property was distributed to Husband during the parties' marriage. SMB's certificate of dissolution, for example, unequivocally states that SMB's known assets—which included the Salt Lake Property—were distributed to the persons entitled to them. Although Husband argues that SMB was still "winding up" at the time of the parties' divorce and still held the Salt Lake Property, the certificate of dissolution provided that the affairs of SMB had been completely wound up in 1996.

Husband later claimed that there were other SMB shareholders entitled to its assets, and that he was not the sole owner of the Salt Lake Property because he was holding it for the benefit of the other shareholders. However, none of Husband's actions after his divorce indicate any other party's ownership interest in the Salt Lake Property. Husband stipulated that the Salt Lake Property was an omitted asset and that he would sell the Property and split one-half of the proceeds with Wife. While Husband argues that he only stipulated that the Salt Lake Property was an omitted asset, rather than an omitted community property asset, it defies logic to suggest that Husband was willing to stipulate to the equal division of valuable separate property years after his divorce was finalized unless it a was community property. In any event, parties are bound by their property stipulations. *Ratliff v. Ratliff*, 129 Idaho 422, 425, 925 P.2d 1121, 1124 (1996). Stipulations are a form of judicial admission which obviate the need for factual proof within the ambit of the stipulation. *Id.* (citing *Perry v. Schaumann*, 110 Idaho 596, 598, 716 P.2d 1368, 1370 (Ct. App. 1986)). Appellate courts reject attempts to attack the sufficiency of evidence supporting a trial court's order when prior stipulations exist on the record. *Id.* Thus, Husband's attempt to challenge an order based on his own stipulation fails.

Further, as discussed above, substantial evidence supports the magistrate court's

conclusion that Husband owned the Salt Lake Property at the time of the parties' divorce in 2003. Wife testified that, to her knowledge, the parties held the Salt Lake Property in B&C at the time of their divorce. The parties stipulated the Salt Lake Property was community property held in B&C in 2005. Husband testified that he formed B&C to hold the Salt Lake Property upon SMB's dissolution prior to his divorce. Husband also admits that B&C is a community-owned limited liability company. After it was discovered that SMB still held the title to the Salt Lake Property, Husband stipulated to deed the land to B&C for sale and equally split the proceeds with Wife.

Ample evidence supports the conclusion that Husband took possession of the Salt Lake Property well before the time of the divorce in 2003, and that it was a community property asset. Husband's tax returns, testimony, actions with other deeds, and representations to third parties all support the conclusion that Husband took possession of the Salt Lake Property prior to the parties' divorce. Thus, the magistrate court did not err in concluding that the Salt Lake Property was community property. Accordingly, we hold that the district court did not err in affirming the magistrate court's determination.

## C. The district court did not err in affirming the magistrate court's appointment of a receiver.

The magistrate court granted Wife's Second Amended Petition and appointed a receiver to manage the sale of the Salt Lake Property and the division of the proceeds. The magistrate court concluded that appointing a receiver is "the only way the court can see that it will be provided with an accurate accounting of the lease proceeds and the legitimate costs incurred by Husband that may be deducted." The district court affirmed the magistrate court's decision to appoint a receiver.

Husband contends that the district court erred in affirming the magistrate court's appointment of a receiver because the magistrate court never had jurisdiction in the first place, Wife failed to plead specific facts for the appointment of a receiver, and the magistrate court was not justified in modifying the 2008 Order to appoint a receiver. We disagree.

Husband's arguments regarding the magistrate court's jurisdiction over the Salt Lake Property have been addressed—and rejected—above. With regard to Husband's remaining arguments, we note that "[t]he power to appoint a receiver is largely in the discretion of the trial court, and an appellate court will not interfere with the exercise of such discretion except in cases of palpable abuse." *Wechsler v. Wechsler*, 162 Idaho 900, 915, 407 P.3d 214, 229 (2017)

18

(quoting *Nw. & Pac. Hypotheekbank v. Dalton*, 44 Idaho 120, 124, 256 P. 93, 95 (1927)). Idaho Code section 8-601 provides the grounds on which a receiver may be appointed:

> A receiver may be appointed by the court in which an action is pending or had passed to judgment, or the judge thereof:
>
> . . .
>
> 3. After judgment to carry the judgment into effect.
> 4. After judgment to dispose of the property according to the judgment, or to preserve it during the pendency of an appeal, or in proceedings in aid of execution, when an execution has been returned unsatisfied, or when the judgment debtor refuses to apply his property in satisfaction of the judgment.

I.C. § 8-601(3), (4).

Further, Idaho Rule of Family Law Procedure 809 provides that a court may relieve a party from a final judgment, order, or proceeding when "the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application," or for "any other reason justifying relief from the operation of the judgment." I.R.F.L.P. 809(5), (6).

As noted above, the power to appoint a receiver is within the discretion of the magistrate court. *Wechsler*, 162 Idaho at 915, 407 P.3d at 229. Here, Husband did not demonstrate an abuse of discretion by the magistrate court. In fact, Husband did not address the Court's well-established abuse of discretion test at all. *See Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018) (delineating this Court's abuse of discretion standard). "Failing to demonstrate that an abuse of discretion occurred under any part of the test . . . is fatal to [an] argument that the [trial] court abused its discretion." *Valiant Idaho, LLC v. VP Inc.*, 164 Idaho 314, 332, 429 P.3d 855, 873 (2018) (internal quotation marks omitted). Thus, Husband's arguments fail outright because he did not address the Court's abuse of discretion standard. We hold that the district court did not err in affirming the magistrate court's appointment of a receiver.

### D. The district court did not err in affirming the $112,125 judgment entered against Husband.

The magistrate court determined that Husband improperly retained all of the proceeds from the transfer of six acres of the Salt Lake Property to BZW. The magistrate court held that Wife was entitled to one-half of the proceeds from the sale of the six acres to BZW and entered a

judgment in favor of Wife for $112,125. The district court affirmed the magistrate court's judgment.

Husband contends that the district court erred in affirming the magistrate court's judgment because Wife never paid any portion of the property taxes owed against the Salt Lake Property and because the rental income from the Property was insufficient to cover the property taxes that accrued on the Property. In essence, Husband argues that the judgment's amount is erroneous because the magistrate court failed to account for Wife's share of expenses, such as property taxes, attorney fees to negotiate a new lease with Clear Channel, and a preliminary wetlands survey on the property. We disagree.

Husband fails to cite a single case, statute, or rule that supports his position. This Court does not consider issues that are unsupported by argument and authority on appeal. *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) ("[T]o the extent that an assignment of error is not argued and supported in compliance with the [Idaho Appellate Rules], it is deemed to be waived."). Additionally, Husband fails to articulate any abuse of discretion regarding the magistrate court's findings supporting its judgment. Failure by a party to demonstrate that an abuse of discretion occurred under any part of the *Lunneborg* test is fatal to an argument that the lower court abused its discretion. *See Valiant Idaho, LLC*, 164 Idaho at 332, 429 P.3d at 873; *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194. Therefore, Husband's argument fails. We hold that the district court did not err in affirming the magistrate court's $112,125 judgment against Husband.

**E. The district court did not err in affirming the magistrate court's award of attorney fees to Wife pursuant to Idaho Code section 12-121.**

The magistrate court awarded Wife attorney fees pursuant to Idaho Code section 12-121. The magistrate court held that, despite Husband's stipulations and judicial admissions, he attempted to gain sole ownership of the Salt Lake Property and flouted two court orders. Thus, the magistrate court concluded that Husband pursued this matter frivolously, unreasonably, and without foundation, awarding Wife attorney fees and costs. The district court affirmed the magistrate court's award.

Whether a statute awarding attorney fees applies to a given set of facts is a question of law over which this Court exercises free review. *Idaho Transp. Dep't v. Ascorp, Inc.*, 159 Idaho 138, 141, 357 P.3d 863, 865 (2015). Attorney fees under Idaho Code section 12-121 may be awarded to the prevailing party when an appeal is brought frivolously, unreasonably, or without

20

foundation. I.C. § 12-121. An award of attorney fees and costs is within the discretion of the trial court and subject to review for abuse of discretion. *Bryant Trucking, Inc. v. Gier*, 160 Idaho 422, 425, 374 P.3d 585, 588 (2016). When reviewing an alleged abuse of discretion, this Court considers whether the trial court (1) perceived the issue as one of discretion, (2) acted within the outer boundaries of that discretion, (3) acted consistently with the legal standards applicable to the specific choices available to it, and (4) reached its decision by an exercise of reason. *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194.

Husband contends that the district court abused its discretion in affirming the magistrate court's award of attorney fees and costs because he raised legitimate jurisdictional arguments for the court's consideration. Further, Husband contends that the district court abused its discretion in considering Husband's conduct and failing to consider the entire course of litigation in determining whether he pursued the matter frivolously, unreasonably, or without foundation.

This Court—like the magistrate court and the district court—has rejected Husband's jurisdictional argument; thus, there is no need to examine that issue again here. Moving then to Husband's other arguments, Husband contends that the magistrate court abused its discretion in considering Husband's course of conduct and his violations of the 2007 Order and 2008 Order in awarding attorney fees under Idaho Code section 12-121. Husband argues that in awarding attorney fees under Idaho Code section 12-121, a trial court's only inquiry is whether a party's position was frivolous, unreasonable, or without foundation. Thus, Husband argues that, in considering Husband's conduct and court order violations, the magistrate court acted outside the boundaries of its discretion by using legal standards that were not applicable. We disagree.

First, Husband cites no authority for the proposition that a court cannot consider a party's conduct during the course of litigation in determining whether the party pursued a matter frivolously, unreasonably, or without foundation. Second, it was Husband's course of conduct that gave rise to the magistrate court finding that his position was frivolous, unreasonable, and without foundation. Given Husband's "attempts to collaterally attack his own [prior] stipulations and judicial admissions" that contradicted his current position, the magistrate court concluded that Husband pursued the matter frivolously, unreasonably, and without foundation. The magistrate court connected Husband's conduct—conduct it found to be troubling—to the appropriate standard under Idaho Code section 12-121 in explaining its decision. Thus, the magistrate court did not abuse its discretion by considering Husband's inconsistent and

21

contradictory conduct.

Additionally, Husband argues the magistrate court abused its discretion by failing to consider the entire course of litigation. Specifically, Husband argues that Wife could not be the prevailing party below because she withdrew her first prayer for relief in her Second Amended Petition—to have the Salt Lake Property appraised and have Husband pay her one-half of the appraised value—on the second day of trial. Thus, Husband argues that he prevailed on the claim that Wife had been pursuing during the entire course of litigation. Once again, we disagree.

A trial court's determination of whether a party prevailed is a matter of discretion. *Idaho Military Historical Soc'y, Inc. v. Maslen*, 156 Idaho 624, 629, 329 P.3d 1072, 1077 (2014). "The prevailing party question is examined from an overall view of the action, not a claim-by-claim analysis." *Id.* at 630, 329 P.3d at 1078 (quoting *Shore v. Peterson*, 146 Idaho 903, 914, 204 P.3d 1114, 1125 (2009)) (internal quotation marks and brackets omitted).

The magistrate court did not err in failing to consider the entire course of litigation when concluding that Wife was the prevailing party. Husband appears to equate one form of relief Wife sought with her overall action. The gravamen of her petition focused on modifying the 2007 Order and 2008 Order. Within her petition, Wife asked for two *alternative* forms of relief: either (1) order Husband to pay Wife one-half of the Salt Lake Property's appraised value; or (2) appoint a receiver. When the magistrate court granted Wife's Second Amended Petition to modify and appointed a receiver, Wife became the prevailing party. Even though Wife voluntarily withdrew one of the forms of relief she sought, she prevailed overall in the action when the magistrate court granted her petition and appointed a receiver. Thus, the magistrate court did not err in failing to consider the entire course of litigation in holding that Wife was the prevailing party. We hold, therefore, that the district court did not err in affirming the magistrate court's attorney fee award.

### F. The district court did not err in affirming the magistrate court's award of discretionary costs to Wife.

After the magistrate court entered its findings of fact and conclusions of law, Wife filed a memorandum for attorney fees and costs, asking for costs as a matter of right and discretionary costs. The magistrate court entered an order granting Wife's request for attorney fees and costs. The magistrate court's order awarded attorney fees and costs associated with three separate attorneys that worked on Wife's behalf. Husband appealed the award of costs to the district court, arguing that the magistrate court erred in awarding Wife all of the costs she requested. The

22

district court affirmed the magistrate court's award, holding that Husband waived this issue because he failed to apply the required abuse of discretion factors. Additionally, "[t]o assure a complete record," the district court rejected Husband's arguments on their merits, holding that Husband failed to demonstrate that the magistrate court abused its discretion in awarding Wife costs.

Husband contends that the district court erroneously ruled that he failed to apply the abuse of discretion factors on intermediate appeal. Further, Husband contends that the magistrate court abused its discretion in failing to enter specific findings of fact that Wife's discretionary costs should be allowed pursuant to Idaho Rule of Family Law Procedure 901(D). Husband also asserts that the magistrate court abused its discretion in considering Wife's three separate memoranda of costs.

The district court was correct in concluding that Husband waived this argument on intermediate appeal by failing to analyze any of the abuse of discretion factors. In Husband's brief on intermediate appeal, Husband does not cite to the abuse of discretion standard, nor does he mention any of the abuse of discretion factors. This Court has held that such a failure is fatal to an argument on appeal. *Valiant Idaho, LLC*, 164 Idaho at 332, 429 P.3d at 873. Thus, the district court did not err in holding that Husband waived this argument on intermediate appeal.

**G. The district court did not err in awarding Wife attorney fees on intermediate appeal.**

The district court awarded Wife attorney fees on intermediate appeal pursuant to Idaho Code section 12-121. The district court concluded that the majority of Husband's arguments on intermediate appeal consisted of his effort to strip the magistrate court of jurisdiction over the Salt Lake Property based on ownership issues that had long been decided and were not appealed. The district court held that such arguments were frivolous for the purposes of Idaho Code section 12-121.

Husband contends that the district court abused its discretion in awarding attorney fees because he raised legitimate jurisdictional and ownership issues for the district court's consideration. Once again, however, Husband fails to engage with any of the abuse of the discretion factors on this issue.

The district court here recognized the issue as one of discretion, acted within the outer boundaries of its discretion, and correctly applied the applicable legal standards. Furthermore, the district court concluded that Husband's attempt to use jurisdictional arguments to collaterally

23

attack prior stipulations and final orders was frivolous, and it supported its conclusion with reasoning based on facts in the record. *See Lunneborg*, 163 Idaho at 863, 421 P.3d at 194. Accordingly, the district court did not abuse its discretion in awarding attorney fees under Idaho Code section 12-121.

**H. Attorney fees and costs for this appeal.**

Husband and Wife both seek attorney fees and costs on appeal to this Court. Idaho Code section 12-121 authorizes an award of attorney fees to a prevailing party when the "case was brought, pursued or defended frivolously, unreasonably or without foundation." Seventeen years after the parties' divorce and multiple stipulations and agreements pertaining to the sale and division of the Salt Lake Property, we find ourselves addressing an unfounded subject matter jurisdiction argument and collateral attack on the parties' original property division. To say that Husband's defense of this matter was unreasonable and without foundation is an understatement. Accordingly, Wife is the prevailing party and she is entitled to an award of attorney fees. Wife is also entitled to an award of costs pursuant to Idaho Code section 12-107 and Idaho Appellate Rule 40.

## IV.    CONCLUSION

This Court affirms the decision of the district court and awards attorney fees and costs on appeal to Wife.


Chief Justice BURDICK, and Justices BEVAN, STEGNER, and MOELLER CONCUR.